L3U6TRUC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4           v.                            19 CR 921(AKH)
                                          Remote Conference
5  NICHOLAS TRUGLIA,

6              Defendant.

7  ------------------------------x

8                                         New York, N.Y.
                                          March 30, 2021
9                                         11:10 a.m.

10 Before:

11                  HON. ALVIN K. HELLERSTEIN,

12                                        District Judge

13
                        APPEARANCES
14
   AUDREY STRAUSS,
15      United States Attorney for the
        Southern District of New York
16 TIMOTHY V. CAPOZZI
        Assistant United States Attorney
17
   DAVID PATTON
18 FEDERAL DEFENDERS OF NEW YORK
        Attorney for Defendant
19 BY:  MARK GOMBINER

20

   ALSO PRESENT:
21
   DENNIS KHILKEVICH, Pretrial (SDNY)
22 CHARLES SWEATT, Pretrial (Middle District of Florida)

23

24

25

L3U6TRUC

```
 1              (The Court and all parties appearing telephonically)
 2              (Case called)
 3              THE DEPUTY CLERK:  Counsel, please state your
    appearances for the record.
 4
 5              MR. CAPOZZI:  Good afternoon, your Honor.  Timothy
 6    Capozzi for the United States.
 7              THE COURT:  Good afternoon.
 8              MR. GOMBINER:  Mark Gombiner, Federal Defenders, for
 9    Mr. Truglia.
10              THE COURT:  Good afternoon.  Keep your voice up,
11    Mr. Gombiner.  It is hard to hear you.
12              MR. GOMBINER:  Mark Gombiner, Federal Defenders, for
13    Mr. Truglia.  Good afternoon.
14              THE COURT:  Good afternoon.
15              Mr. Truglia, are you on the line?
16              THE DEFENDANT:  Yes, I am.
17              THE COURT:  Good afternoon.
18              THE DEFENDANT:  Good afternoon, your Honor.
19              THE COURT:  I think Mr. Khilkevich and Mr. Sweatt are
20    on the line from Pretrial Services in New York and Orlando,
21    Florida, respectively.
22              The court reporter, Jennifer is, on the line as well.
23              Mr. Capozzi, you open up.
24              MR. CAPOZZI:  Thank you, Judge.
25              The Court received the letter that I sent a week or so
```

L3U6TRUC

1    ago.

2              THE COURT:  The Court has received it.

3              MR. CAPOZZI:  Thank you, Judge.

4              The defendant here is charged in this case with

5    participating in a scheme in which he and his co-conspirators

6    used phones and computers to steal approximately $24 million

7    worth of cryptocurrency from a victim.  The defendant is --

8              THE COURT:  I read the indictment and I read your

9    letter.  Let's go immediately to the alleged violations.

10             MR. CAPOZZI:  Your Honor, the defendant is prohibited

11   from his bail conditions from using or possessing

12   internet-enabled electronic devices, which would include cell

13   phones and computers.  As set forth in the letter, the

14   government had very good reason to believe that he has violated

15   that condition both in this past December as well as, more

16   recently, in March.

17             THE COURT:  You'll have to tell me more than you have

18   good reason.  You have to convince me.

19             MR. CAPOZZI:  Your Honor, in December, we, the

20   government, received copies of communications that were made

21   via, among other things, the WhatsApp messaging platform.  And

22   after receiving those -- the recipients of those messages know

23   the defendant and believed that the defendant had sent those

24   messages to them, based on the content of the communication.

25   Upon receipt of those communications, the government obtained

L3U6TRUC

records from WhatsApp, which linked the communications to an IP
address.  The government received records from Charter
Communications, which linked that IP address to an address
which I believe is the address at which the defendant is
currently residing pursuant to the Court's condition that he be
under home detention.

       In addition, then, more recently, the same individual
or individuals who received messages back in December, again
received communications that they believed were from the
defendant based on the contents, and we sent a copy of these
communications.  Some of them indeed used his actual name.

       THE COURT:  Where can I see that?

       MR. CAPOZZI:  Your Honor, if you have a copy of
Exhibit A --

       THE COURT:  One minute.

       I have it.

       MR. CAPOZZI:  It's a five-page document.

       THE COURT:  I only saw one page.

       MR. CAPOZZI:  Okay.

       THE COURT:  I have it.  How do you attribute it to the
defendant?

       MR. CAPOZZI:  Your Honor, Exhibit A, page 2, shows a
reference halfway down the page.  There's a question and I
believe this is from the recipient of the message responding to
the message:  Mr. Truglia, how have you been?  Which garners a

L3U6TRUC

1    response that, is not -- that is simply a response:  Better

2    than, I see.  It is not a response that the person does not

3    know why he is being referred to as Mr. Truglia.  Clearly's,

4    that's this defendant's last names.

5            These messages on page 1 --

6            THE COURT:  So there is an inquiry by the recipient,

7    Mr. Truglia:  How have you been?  That is at 9:13 p.m.  And the

8    answer is:  Better than you, I see?

9            MR. CAPOZZI:  Correct.

10            THE COURT:  Is that Mr. Truglia's answer?

11            MR. CAPOZZI:  That's my understanding of this

12    communication.

13            THE COURT:  Because he has been called Mr. Truglia?

14            MR. CAPOZZI:  Correct.

15            THE COURT:  And then it's repeated by whoever is on

16    212-810-9167.  His answer is:  Love to hear it.

17            MR. CAPOZZI:  Correct.

18            THE COURT:  And then the response is:  We have

19    unfinished business, if I recall correctly.

20            Go ahead.

21            MR. CAPOZZI:  Correct.  Thank you, Judge.

22            Page 1 and 2 of this document are the examples of the

23    December communication that we subsequently linked to the

24    defendant via the records from WhatsApp and Charter

25    Communication.

L3U6TRUC

1          On page 3, we are now in the March time frame, and if

2     you proceed to the final page of the document, you see an image

3     of what appears to be the defendant, and it bears the name

4     "Nicholas," which is this defendant's first name.  And then

5     towards the bottom of that message -- the bottom of that page,

6     rather, you see, next to that image of what appears to be the

7     defendant, a question:  "Miss me?"  And then you see there is

8     an indication -- a question from the messaging platform whether

9     or not the recipient of the message accepts the message request

10    from, parentheses, "Nicholas," question mark.

11          THE COURT:  And he answers, "Accept"?

12          MR. CAPOZZI:  I don't know in fact whether or not -- I

13    see that the "accept" is in white lettering as opposed to the

14    others.  I don't know that that actually indicates that the

15    message was in fact accepted or not.

16          THE COURT:  Higher up on the page there a reference to

17    64 followers to Nicholas's Instagram.

18          What do you make of that?

19          MR. CAPOZZI:  Correct.

20          Your Honor, I don't -- I only know -- I can only speak

21    to what I see on the page.  That would suggest to me that he

22    has -- that this Instagram account has 64 followers.  I do not

23    know -- I do not have the records to tell me when this

24    Instagram account was opened and when those followers were

25    obtained, if in fact this is what we believe it to be.

L3U6TRUC

1          THE COURT:  Is there anything significance to Host C

2    Conseco?

3          MR. CAPOZZI:  I do not know the significance, if there

4    is any.

5          THE COURT:  Then there is a threat on page 1.

6          MR. CAPOZZI:  Correct.

7          THE COURT:  Any significance to this VOSR of the

8    threat?

9          MR. CAPOZZI:  Well, your Honor, the individual who

10   received these messages has a history with the defendant, and

11   that history includes a criminal case that was filed,

12   initiated, in state court in Manhattan.  Based on the media

13   reporting of that criminal case, there were allegations made by

14   this defendant alleging that the people who include the

15   recipient of these messages made an attempt to steal the

16   defendant's cryptocurrency.  The recipients of these messages,

17   I have not spoken directly to, but I have communicated with

18   their counsel, and their counsel have communicated that they

19   certainly view these as threatening messages, in part --

20         THE COURT:  Let me be specific.

21         There is an indication here that someone sent -- and

22   if it is all the Instagram of Nicholas Truglia, the inference

23   is that Nicholas Truglia sent the message as follows:  If you

24   value your little hotel and Tequila deals, you'll start playing

25   it straight with me.  I am not giving you much longer.  Call

L3U6TRUC

1    me.  Otherwise, you should just tell him to call ahead of time.

2              MR. CAPOZZI:  Correct your Honor.  Clearly, on the

3    face of that, that seems threatening.

4              THE COURT:  Is that on the period that conditions were

5    set by Judge Lehrburger not to use the internet?

6              MR. CAPOZZI:  Those messages were sent in December of

7    2020.  The conditions were ordered by the Court in, I believe,

8    April of 2020.  So, yes, this is all during the period where

9    these conditions apply.

10             THE COURT:  Where is the defendant now?

11             MR. CAPOZZI:  Your Honor, the defendant is in Florida.

12             THE COURT:  How is he in Florida when he restricted to

13   New York, New Jersey and the Northern District of --

14             MR. CAPOZZI:  Your Honor, the defendant -- I believe

15   it was that the defendant was residing with his father in New

16   Jersey.  The father moved to Florida, and I believe that

17   defense counsel put in a request, which was endorsed, allowing

18   for the transfer of his residence from New Jersey to Florida.

19             MR. GOMBINER:  Judge, he is still living with his

20   father in Florida, and is he on home detention.  That's why he

21   is now residing in Florida, because that is where his father

22   lives.

23             THE COURT:  Thank you, Mr. Gombiner.

24             Anything else, Mr. Capozzi?

25             MR. CAPOZZI:  Your Honor, I would just add that the

L3U6TRUC

1    defendant had existing criminal charges in California which

2    have the same conditions.  So to the extent these

3    communications violate this Court's conditions, they are also

4    violating state court conditions in California.

5           THE COURT:  Mr. Capozzi --

6           MR. CAPOZZI:  Sorry, your Honor.  I didn't quite hear

7    you.

8           THE COURT:  This doesn't concern me, does it, that he

9    may be violating California's requirements?

10          MR. CAPOZZI:  Only to the extent that it shows his

11   failure to comply with multiple courts.

12          THE COURT:  Well, it's the same conduct, so my --

13          MR. CAPOZZI:  Yes, your Honor.

14          THE COURT:  -- focus is not on any California state

15   court judge's case.

16          MR. CAPOZZI:  Fair enough, your Honor.

17          THE COURT:  So, bottom line, the condition that is

18   allegedly violated is Judge Lehrburger's condition, which was

19   supposedly met on April 29th, 2020 — no access to

20   internet-accessible devices, including computers, cell phones,

21   etc.; no possession of personally identifying identification of

22   others -- what is the first one -- no access to internet?  The

23   government contends it has violated that; correct?

24          MR. CAPOZZI:  Correct, your Honor.

25          THE COURT:  That is a condition that was imposed on

L3U6TRUC

1  April 29th, 2020?

2          MR. CAPOZZI:  I believe it was April 15th, if I have

3  my date correct, 2020.

4          THE COURT:  His remaining conditions to be met by

5  4-29-2020?

6          MR. CAPOZZI:  Correct, your Honor, that's correct.

7          THE COURT:  How do we know that that threat in April

8  on Exhibit A was made for April 29th, 2020?

9          MR. CAPOZZI:  Your Honor, these messages are from

10  December 2020.

11          THE COURT:  Okay.  Mr. Gombiner.

12          MR. GOMBINER:  Judge, you know, I am not really like a

13  computer expert to the extent I can determine who actually sent

14  these messages because, you know, it's obviously very easy over

15  the internet to impersonate someone.  Putting that aside, what

16  I would point out is that Mr. Truglia has been out on home

17  detention for almost a year.  This is the first instance where

18  there has been any accusation of any violation of his

19  conditions.

20          Secondly, although I would agree that these comments

21  in these messages could be construed as threats, I don't

22  believe that they can be construed as illegal threats.  I think

23  essentially what the threat is, I am going to go to the media.

24  Now, maybe that would be unpleasant.  In one sense of the word,

25  that is threatening, but I don't think that is conduct that

L3U6TRUC

1    could be considered, the underlying conduct could be considered

2    criminal, and there is no allegation here that is it criminal.

3            So I am instructing Mr. Truglia very firmly that he is

4    not --

5            THE COURT:  That's not a threat?  If you value your

6    little hotel and Tequila deals, you better get straight with

7    me?

8            MR. GOMBINER:  I think that's what it refers to is, if

9    I go to the media and this is all over the thing, your hotel

10   and Tequila deals may go south.  Judge, this is -- I am not

11   saying that if -- assuming, which I am not conceding that

12   Mr. Truglia was the one who said these things, obviously, there

13   that would be something that would probably be better not said.

14           There is, as the government has noted, these

15   individuals who were the recipients of this were previously

16   accused of criminal conduct by Mr. Truglia.  I think this is

17   sort of a rabbit hole that is going to take a long time to dig

18   our way out of.

19           THE COURT:  Page 2 indicates that the person who was

20   giving the message didn't identify himself.

21           MR. GOMBINER:  Right.

22           THE COURT:  Who is this -- the WhatsApp has no name,

23   and the --

24           MR. GOMBINER:  Judge, I have no idea, honestly.  I am

25   really not in a position to make any --

L3U6TRUC

1          THE COURT:  Mr. Gombiner --

2          MR. GOMBINER:  Yes, Judge.  Sorry.

3          THE COURT:  The response is:  I think we should have a

4    chat soon.  And then the answer is:  Mr. Truglia, how have you

5    been?  And there's a positive answer of identification.  So

6    it's prima facie a violation --

7          MR. GOMBINER:  Judge, I would, agree, prima facie, it

8    is a prima facie, if you just take this on the simplest way of

9    looking at it, yes, it's a violation.  What I am saying is that

10   I don't think the violation involves -- the violation is

11   essentially utilizing an internet device when you are not

12   supposed to be using one.  If that is true, that is a

13   violation.  So I would concede that.

14          I would just say that Mr. Truglia has been on home

15   detention for a year.  There haven't been any other allegations

16   that he has done anything else wrong, and I think that -- as I

17   said, I have given him the most specific instructions, that he

18   has not to have any kind of access to the internet, which is,

19   obviously, in today's world, for many people, being with --

20   that's a very difficult thing to comply with, but, you know,

21   that is the condition, that is the condition of his release, so

22   that's what I have told him very specifically.  He does not

23   have the right to have any kind of internet access device.  He

24   can use his telephone if he wants to call someone.

25          Given that, and particularly given that he is still

L3U6TRUC

1    trying to work out this case in California, which I think might

2    very well control how this case is resolved, I think the

3    appropriate thing to do here is for the Court to instruct

4    Mr. Truglia about the fact that he cannot access the internet

5    at all, regardless of what he might desire to do, and that --

6        THE COURT:  An internet accessible device.

7        MR. GOMBINER:  Right.  He is not supposed to have any

8    internet accessible device.  It includes an iPhone or a

9    computer that has any kind of internet access.  I guess could

10   you have a computer, but not one that is capable of accessing

11   the internet.  I think those are still available.  I think

12   that's what should happen here.

13       I am not in a position to say whether this is

14   Mr. Truglia or not.  I think this is a little bit -- you have

15   to make some inferences.  But I understand the Court's

16   position, that you could certainly, by a preponderance, you

17   could conclude it is Mr. Truglia.  I don't want to argue about

18   that as much as what is the appropriate way going forward is.

19   I think my suggestion is the right one.

20       THE COURT:  Mr. Capozzi, what does the government

21   want?

22       MR. CAPOZZI:  Your Honor, we think it more than meets

23   the burden.

24       THE COURT:  What is it that you want?  What relief do

25   you want me to give you?

L3U6TRUC

1          MR. CAPOZZI:  Your Honor, the defendant has proven he

2     is he unwilling or unable to not use electronic devices.

3     Pretrial I don't think has any mechanism other than what they

4     attempted in terms of preventing him from using such devices.

5     So I don't know that there is an option short of remand that

6     can give the Court assurance of compliance.

7          THE COURT:  Do you want me to remand Mr. Truglia?

8          Does the government want me to remand Mr. Truglia?

9          MR. CAPOZZI:  Your Honor, I believe that in order

10    to -- listen, your Honor, I concede that this is a difficult

11    case, and I don't make the recommendation lightly to remand

12    someone, which is why I am hesitating, your Honor, because I

13    concede it is difficult.  Your Honor, I think it appears there

14    is no set of conditions that will adequately protect the

15    public, because of this defendant's proven repeated conduct

16    here.

17          MR. GOMBINER:  Let me say two things.

18          One, I think there is one condition.  The Court could

19    authorize Pretrial Services to conduct unannounced searches of

20    Mr. Truglia's residence, which would be one way of -- other

21    than telling him not to do --

22          THE COURT:  Mr. Gombiner, that will not work.

23          MR. GOMBINER:  So, Judge, if that won't work, I don't

24    think that using a -- I know this -- I am not saying is not a

25    serious violation.  Obviously, I am taking it seriously and

L3U6TRUC

1    Mr. Truglia is taking it seriously.

2              THE COURT:  What do you want me to do to assure there

3    isn't a repetition of conduct?  The government says I should

4    remand him.  You say I should just admonish him, but that

5    didn't do any good.  What is the point of that?

6              MR. GOMBINER:  Judge, you haven't previously.  You are

7    a more persuasive voice, and you are good at settling cases and

8    you are good at, I think, probably getting people to do what

9    they are supposed to do.  So I wouldn't say that, you know,

10   that's a totally futile approach to things in and of itself.

11             I think the other thing is that Mr. Truglia is now

12   aware that, assuming he did make these communications that the

13   government has ways of ascertaining — which does seem to be

14   true that — they have ways of ascertaining whether he is using

15   the internet that don't depend on somebody searching his house

16   and finding a computer device.  That is what society is using.

17   It is easy to impersonate people but it is easy to find people

18   who are -- there are lots of ways -- if you have the right

19   tools, you can discover what is going on with someone.

20             THE COURT:  The government didn't know until well

21   after the event.

22             MR. GOMBINER:  They knew, actually, fairly soon after

23   the event.

24             THE COURT:  The recipient of the message told the

25   government.

L3U6TRUC

1          MR. GOMBINER:  Yes.

2          THE COURT:  So if the recipient is sufficiently

3     threatened, he will not tell the government because he is

4     afraid to.

5          MR. GOMBINER:  I am not sure.  I don't want to get

6     into that.  It's all speculation, so I am not going to go down

7     that road.

8          THE COURT:  I don't see any practical suggestion on

9     your part, Mr. Gombiner.

10         MR. GOMBINER:  Judge, I am not sure what practical

11    suggestion I can have.  I mean, one way is to, like, see if you

12    can do just a physical inspection, determine whether the

13    defendant, whether Mr. Truglia, has any internet access devices

14    in his possession.  That is one thing you could do.

15         A second thing you could do is just for the Court,

16    rather than me or Pretrial Services, to instruct them on the

17    importance of not accessing or having possession of or access

18    to any internet-capable devices.  That is a second suggestion.

19         I mean, I don't know.  There are only so many things I

20    can say.  It's like telling somebody, don't commit a crime.  Of

21    course, there is nothing, in one sense, you can do from

22    stopping someone from doing something wrong, but it doesn't

23    mean that we remand anyone every time that they violate some

24    condition of their supervised release.  He has been out for

25    over a year.  These are the first allegations of anything else

L3U6TRUC

1    like this.

2              THE COURT:  Tell you what, Mr. Gombiner, we're going

3    to recess for 10 minutes.

4              MR. GOMBINER:  Okay.

5              THE COURT:  You talk to your client.

6              MR. GOMBINER:  Okay.

7              THE COURT:  Find out from your client how he could

8    create confidence on the part of the government and the judge

9    and he will not be any source of alleged violation of the

10   conditions of his release.

11             MR. GOMBINER:  Okay.  Thank you, Judge.

12             Mr. Truglia, can you call me when I hang up here?

13             THE DEFENDANT:  Yes.  I can.

14             MR. GOMBINER:  Thank you, Judge.  Should we call back

15   in ten minutes?

16             THE COURT:  Brigitte, how should we handle this?

17             THE DEPUTY CLERK:  Call back in ten minutes.

18             THE COURT:  Call back.

19             MR. GOMBINER:  We'll call back this number in ten

20   minutes.

21             THE COURT:  Okay.

22             MR. GOMBINER:  Thank you, Judge.  Bye-bye.

23             (Pause)

24             THE COURT:  Mr. Khilkevich and Mr. Sweatt, do we have

25   any suggestions before we resume?

L3U6TRUC

1          MR. KHILKEVICH:  Dennis Khilkevich from Southern

2     District New York.  I just want to raise a couple of points.

3          Mr. Truglia has been out on bail since April, so for

4     approximately a year.  He has never been supervised locally.

5     He resided in New Jersey; now he resides in Florida.  We have

6     been in contact with the supervising officers currently in

7     Florida, and it is our understanding that all the routine

8     conversations and home visits have not revealed any violations.

9     Mr. Truglia insists that he did not have any access or possess

10    any internet devices.  So, as it stands right now, we are not

11    sure what devices he uses, and he has not made any statements

12    about using anything.

13         So we would like to know, if the Court continues bail

14    in this case, what he is specifically using so we can maybe

15    figure out a way for him not to use it.

16         THE COURT:  That is a good suggestion.

17         Mr. Sweatt?

18         MR. SWEATT:  No, your Honor.  Just to reiterate, there

19    has been no indication of noncompliance on my part since I

20    supervised the defendant here in Florida.

21         THE COURT:  Where it the defendant live, Orlando?

22         MR. SWEATT:  Yes, Winter Park, Florida, which is a

23    small city just outside of Orlando.

24         THE COURT:  Are you based in Orlando?

25         MR. SWEATT:  Yes, your Honor.

L3U6TRUC

1          THE COURT:  Are you able to make any home visits?

2          MR. SWEATT:  Yes, your Honor.

3          Due to COVID-19, right now, they have been modified,

4     primarily.  Previously, we had virtual home assessments, as we

5     have been directed to not to enter residences through our

6     management.  Mr. Truglia previously used his father's cell

7     phone, if I recall correctly, to conduct that virtual contact

8     simply for that purpose, but even during those modified visits,

9     Mr. Truglia and I addressed internet access, and he said no

10    internet use.

11          THE COURT:  Would you know if his father's phone had

12    internet access?

13          MR. SWEATT:  From my understanding, your Honor, it

14    does, in his father's position, in order to facilitate -- I

15    can't recall immediately whether it was WhatsApp or FaceTime,

16    but it had internet access to facilitate that call, for us to

17    do the modified virtual home assessments.

18          THE COURT:  Does he have a landline in his home?

19          MR. SWEATT:  Yes, your Honor.  He just recently got

20    one in the last few months.  There was one that had been placed

21    at the residence.  Previously, he used his father's cell phone

22    just to report in, only for that purpose.  I was able to get in

23    touch with his father whenever I needed to contact him.

24          THE COURT:  But now he has a landline?

25          THE DEFENDANT:  Yes, your Honor.

L3U6TRUC

1          THE COURT:  I assume that I can order him to get a

2      flip phone that has no internet access?

3          MR. SWEATT:  Yes, your Honor.  We can ask to verify

4      and see direct contact, yes, your Honor.

5          THE COURT:  Are you able to give him a flip phone?

6          MR. SWEATT:  I would have to check with our funding

7      here.  I have never had that process used for funding.

8          THE COURT:  That would be a good method of control.

9          MR. GOMBINER:  I think Mr. Truglia's father is in a

10     position to purchase a flip phone for him.

11         THE COURT:  But the idea of having connection to

12     Pretrial Services might be a good idea.

13         What is it that you suggest, Mr. Gombiner?

14         MR. GOMBINER:  Judge, I didn't come up with anything

15     that different.  One thing that might help somewhat is that we

16     could do virtual home inspections using FaceTime and having his

17     father, you know, use his phone.  I am not sure, like, if that

18     is a hundred percent effective.

19         THE COURT:  On a forbidden use of his father's phone.

20         MR. GOMBINER:  No, no.  His father could be there --

21         THE COURT:  I want to forbid him.

22         MR. GOMBINER:  Oh.  I was going to say his father

23     would be using the phone, not Mr. Truglia.  That would be the

24     idea.

25         I think the best thing is to have -- you know,

L3U6TRUC

1    Mr. Truglia is using the landline right now to speak to the

2    Court, so I think if he had a flip phone, which I know they

3    still make, that he could use, that doesn't have any access

4    capability, and if he was aware that pretrial got the

5    capability to make, you know, unannounced home inspections --

6    particularly given that, I don't think -- I know we're sort of

7    going on the assumption that he did use internet devices to

8    make these communications.  I just want to be clear, we're not

9    conceding that happened, and I think people who are recipients

10   of these messages have a history of maybe making some --

11   manufacturing some evidence.

12           But without getting into that, because I think it is a

13   very complicated thing, I do think that, given the rest of

14   history in Pretrial Services, and also given the fact that

15   Mr. Truglia is under psychiatric care, where he is getting

16   medications and where that is going to be a huge problem if he

17   is remanded, I do think that it would be better to adopt some

18   of the suggestions of Pretrial Services.  I think that is going

19   to work.  I don't think there are going to be any further

20   instances where the Court is going to hear about any problems.

21   I am pretty confident that is the case.

22           THE COURT:  Mr. Capozzi, should I ask the defendant to

23   plead to the VOSR and you'll prepare to introduce evidence?

24           MR. CAPOZZI:  Your Honor, he's on release.

25           THE COURT:  Sorry.  That's wrong.  Excuse me.  I take

L3U6TRUC

1    it back.

2              MR. CAPOZZI:  Here is what I am going to do:  I am not

3    going to remand Mr. Truglia at this time, provided that he have

4    no further use of his father's telephone, and that should be

5    made known to his father; that all communications will either

6    be through a landline or through a flip phone that has no

7    access to the internet.  If defendant uses a computer, that

8    computer must be identified to Mr. Sweatt, and any ISP on that

9    computer that would allow access to the internet must be

10   disabled.

11             Mr. Sweatt, do you think those are adequate?

12             MR. SWEATT:  Yes, your Honor.  Anytime the defendant

13   needs to have access or use, I will verify with them to provide

14   any documentation or information for his use, yes, your Honor.

15             THE COURT:  So those conditions will be applied.

16             Mr. Truglia, by a very slim margin, you are not

17   remanded.  That means I am not putting you in jail to await

18   trial.  If you're wise, you'll make sure that there are no

19   other even remote possibilities that you have access to the

20   internet, because next time it is very highly likely that you

21   will be in jail.

22             The government, in my judgment, is able to prove, by a

23   preponderance of evidence, that you used the internet, two

24   times at least, and that the use of the internet was to convey

25   a threat along the lines that you are indicted on.  If I need

L3U6TRUC

1    to, I can make those findings.  And within those findings,

2    there will be no condition or set of conditions that would

3    assure an absence of danger to the community.  I am not going

4    to do that, but you should make yourself aware that you escaped

5    jail by the skin of your teeth.  Make sure that you comply

6    fully with the conditions which are set.

7            Mr. Capozzi, would you please present an order for me

8    to sign and establish the new conditions and reestablish the

9    old conditions?

10           MR. CAPOZZI:  Yes, your Honor.

11           THE COURT:  Is there anything further to do today?

12           MR. GOMBINER:  No, Judge.  Thank you.

13           MR. CAPOZZI:  Your Honor, briefly.  We're on your

14   Honor's calendar for just a regular conference in this case on

15   Thursday of this week.  I don't know if -- we can just dial

16   back in on Thursday, which is fine, or --

17           THE DEPUTY CLERK:  I took that off, Judge.  I put that

18   on for today.

19           MR. CAPOZZI:  Okay.

20           MR. GOMBINER:  That's good, because I am trying to

21   work on my tennis game down here in South Carolina.  I want to

22   keep that time open.

23           MR. CAPOZZI:  Your Honor, perhaps the parties -- I can

24   confer with Mr. Gombiner, and the parties will put in a letter

25   concerning a view on when we should schedule a further

L3U6TRUC

1    conference in the case, and I expect that request will include

2    a request for exclusion of time.  As of now, time is excluded

3    until this Thursday, so we'll be sure to put in a letter that

4    allows for the Court, if the Court is inclined, to exclude time

5    going forward to that date.

6              THE COURT:  I will exclude time.

7              Has all production and discovery been made?

8              MR. CAPOZZI:  Your Honor, the majority of it has been

9    made.  There are a few -- there are some materials that I

10   expect to produce in the next couple weeks, of additional

11   electronic accounts.  So we're nearing the end of production of

12   discovery.

13             THE COURT:  How far ahead can I look?

14             MR. CAPOZZI:  For a date for a conference?

15             THE COURT:  When you finish discovery?

16             MR. CAPOZZI:  Your Honor, I expect it will be done at

17   the end of April.

18             THE COURT:  Why so long?

19             MR. CAPOZZI:  Your Honor, the remaining materials

20   include email accounts, not of the defendant but of others,

21   which have required involvement of privilege review and a taint

22   filter.  That is my hesitation, which is just to allow

23   resolution of the questions related to the taint team's work.

24             THE COURT:  I should next see you in May, with the

25   idea that there will either be a plea or a trial date.

L3U6TRUC

1           THE DEPUTY CLERK:  Judge, how about May 21st at noon?

2           THE COURT:  Just a minute.

3           Before you do that, what do you think, Mr. Capozzi?

4           MR. CAPOZZI:  Your Honor, as of the next day, there

5      either will be a plea or for setting a trial date?

6           THE COURT:  Yes.  If there is no plea discussion going

7      on, we will set a trial date.

8           MR. CAPOZZI:  That's fine with the government, your

9      Honor.  I don't know if the defendant has any anticipated

10     motions to file.

11          THE COURT:  Do you, Mr. Gombiner?

12          MR. GOMBINER:  Judge, right now, we don't have any --

13     you know, other than possibly some in limine motions, but I

14     think by May 21st we'll be in a position to tell the Court

15     whether there is -- we'll be in a position to ask for a trial

16     date unless there is a disposition.  So I think that would work

17     for us.

18          THE COURT:  Should I adjourn this to May 21?

19          THE DEPUTY CLERK:  At noon.

20          THE COURT:  We'll adjourn to May 21 at noon.

21          Time is excluded until May 21.  I take it the

22     government so moves, does it not, Mr. Capozzi?

23          MR. CAPOZZI:  It does, your Honor.

24          MR. GOMBINER:  No objection, Judge.

25          THE COURT:  On the ground that the further production

L3U6TRUC

1    has to be made and the production has to take time because of

2    the need to deal with third-party sources and other problems,

3    but that production will be completed by the end of April.

4            Right, Mr. Capozzi?

5            MR. CAPOZZI:  Yes, your Honor.

6            It occurred to me after I spoke, the only other

7    outstanding discovery that will not likely be produced is, we

8    have some pending MLAT requests overseas records.  We'll

9    produce those as soon as they are received by the government.

10   They are not the bulk of the production by any stretch, but

11   they are outstanding.  I do not know the likelihood that we'll

12   get them back within the next 30 days.

13           MR. GOMBINER:  Judge, that won't prevent us from being

14   able to say whether we're going to want a trial or not.

15           THE COURT:  The motions will be declared along with

16   trial dates with response dates, and we'll go from there.

17           MR. GOMBINER:  Thank you, Judge.

18           THE COURT:  See you May 21 at noon.

19           MR. GOMBINER:  Thank you.

20           THE COURT:  Have we issued a *Brady* order in this case?

21           MR. CAPOZZI:  You have, your Honor.

22           THE COURT:  The government knows what its obligations

23   are under *Brady*?

24           MR. CAPOZZI:  It does, your Honor.

25           THE COURT:  I should have started this with findings

L3U6TRUC

1   under the Cares Act — that I am authorized, because of the

2   pandemic and because of other inconveniences, including the

3   distance between Florida and the necessity for travel between

4   Florida and New York, to dispense with the requirement of

5   proceeding in open court.  I am authorized to conduct this

6   proceeding by telephone provided that defendant accepts.

7             Do you accept, Mr. Truglia?

8             THE DEFENDANT:  Yes, I do.

9             THE COURT:  I think that covers everything.  See you

10  May 21.  Good-bye.

11            MR. GOMBINER:  Thank you, Judge.

12                            o0o

13

14

15

16

17

18

19

20

21

22

23

24

25