LAZNTRUP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              19 Cr. 921 (AKH)(BCM)

NICHOLAS TRUGLIA,

            Defendant.              Plea

------------------------------x

                               New York, N.Y.
                               October 28, 2021
                               10:00 a.m.

Before:

                 HON. BARBARA C. MOSES,

                              U.S. Magistrate Judge

                    APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  TIMOTHY V. CAPOZZI
     Assistant United States Attorney

JEFFREY UDELL
ADAM COHEN
     Attorneys for Defendant

Also Present:
Zoe Olbrys, Defense Paralegal

LAZNTRUP

1      THE DEPUTY CLERK:  United States v. Nicholas Truglia,

2  19 Cr. 921.  Counsel, please state your name for the record,

3  starting with the government.

4      MR. CAPOZZI:  Good morning, your Honor.  Timothy

5  Capozzi, for the United States.

6      THE COURT:  Good morning, Mr. Capozzi.

7      MR. UDELL:  Good morning, your Honor.  Jeffrey Udell,

8  and with me is Adam Cohen for Mr. Truglia.

9      THE COURT:  All right.  Hold on.  Mr. Udell to my

10  right and --

11      MR. COHEN:  Adam Cohen.

12      THE COURT:  C-o-h-e-n?

13      MR. COHEN:  Yes, your Honor.

14      THE COURT:  And this is Mr. Truglia standing between

15  you?

16      MR. UDELL:  Yes, your Honor.

17      THE COURT:  Am I pronouncing your name correctly?

18      THE DEFENDANT:  Yes, your Honor.

19      THE COURT:  You may all be seated.

20      One more.

21      MS. OLBRYS:  Zoe Olbrys, paralegal.

22      THE COURT:  Last name, please.

23      MS. OLBRYS:  Olbrys.

24      THE COURT:  Spell it.

25      MS. OLBRYS:  O-l-b-r-y-s.

LAZNTRUP

1              THE COURT:  O-l-b-r-y-s.  Good morning, Ms. Olbrys.

2              Everybody may be seated.  Thank you very much.

3              Mr. Truglia, for the record you speak and understand

4    English?

5              THE DEFENDANT:  Yes, your Honor, I do.

6              THE COURT:  Mr. Udell, I understand that we are here

7    for a change of plea.  I am told that your client, having

8    previously pleaded not guilty, now wishes to plead guilty to

9    Count One of the indictment in this matter, is that correct?

10             MR. UDELL:  That is correct, your Honor.

11             THE COURT:  All right.  So we will begin with a

12   document entitled consent to proceed before a magistrate judge.

13   May I have the consent form, please.  Thank you very much.

14   This document -- which I am holding up, entitled to Consent to

15   Proceed Before a United States Magistrate Judge -- appears to

16   have the defendant's signature on it.

17             Is that your signature, sir?

18             THE DEFENDANT:  Yes, that is my signature, your Honor.

19             THE COURT:  Okay.  Now what this document says is that

20   you know you have a right to have your plea taken by a United

21   States district judge, but you are agreeing to have your plea

22   taken by me, a United States magistrate judge.

23             As a magistrate judge, I have the authority to take

24   your plea with your consent and you have all of the same rights

25   as if you were before a district judge.  If you are found

LAZNTRUP

 1  guilty, you will be sentenced by the district judge who is

 2  assigned to your case.

 3          Now, did you sign this consent form voluntarily?

 4          THE DEFENDANT:  Yes, your Honor.

 5          THE COURT:  And did you discuss it with counsel before

 6  you signed it?

 7          THE DEFENDANT:  Yes, your Honor.

 8          THE COURT:  And do you wish to proceed with your plea

 9  in my courtroom this morning?

10          THE DEFENDANT:  I do, your Honor.

11          THE COURT:  I will accept your consent.

12          Mr. Quintero.  There we go.

13          Let me just check with you.  I already spoke to your

14  counsel about this.  Is it your wish this morning to change

15  your plea and to enter a plea of guilty to Count One of the

16  indictment?

17          THE DEFENDANT:  It is, your Honor.

18          THE COURT:  Before I can decide whether to accept a

19  guilty plea from you, I need to ask you a series of questions.

20  It's important that you answer these questions honestly and

21  completely.  The purpose of the questioning is to make sure

22  that you understand your rights, including the rights you will

23  be waiving, to make sure that you are pleading guilty of your

24  own free will, and to make sure that you're pleading guilty

25  because you are guilty and not for some other reason.  If you

LAZNTRUP

1  don't understand any of the questions I ask you, or if you

2  simply want a moment to consult with counsel, please let me

3  know.  It is important that you understand every question

4  before you answer it.

5          Are you ready?

6          THE DEFENDANT:  I am, your Honor.

7          THE COURT:  I will ask my deputy to swear the

8  defendant, please.

9          (Defendant sworn)

10          THE COURT:  You may be seated.  Thank you.

11          We will begin with an easy question.  What is your

12  full name, please.

13          THE DEFENDANT:  Nicholas St. Denis Truglia.

14          THE COURT:  What is the middle name?

15          THE DEFENDANT:  St. Denis.

16          THE COURT:  S-t?

17          THE DEFENDANT:  D-e-n-i-s.

18          THE COURT:  Got it.  Thank you very much.

19          How old are you, sir.

20          THE DEFENDANT:  I'm currently 24 years old.

21          THE COURT:  Are you a citizen of the United States?

22          THE DEFENDANT:  I am.

23          THE COURT:  How far did you go in school?

24          THE DEFENDANT:  College, undergraduate.

25          THE COURT:  You have a bachelor's degree?

LAZNTRUP

1              THE DEFENDANT:  No.

2              THE COURT:  How many years of college do you have?

3              THE DEFENDANT:  Two.

4              THE COURT:  Two years of college.

5         Again, for the record, you can read and write in

6    English, correct?

7              THE DEFENDANT:  I can.

8              THE COURT:  Okay.  Are you now or have you recently

9    been under the care of a doctor, including a psychiatrist or a

10   psychologist, for any reason?

11             THE DEFENDANT:  I have.

12             THE COURT:  Okay.  Let's start with the physical side.

13        Are you under the care of a doctor for any physical

14   condition?

15             THE DEFENDANT:  I am.

16             THE COURT:  Tell me about that.

17             THE DEFENDANT:  Just general anxiety and a heart

18   condition.

19             THE COURT:  Okay.  Anxiety and a heart condition.  Any

20   other psychological issues besides the anxiety?

21             THE DEFENDANT:  No, your Honor.

22             THE COURT:  All right.  Have these doctors prescribed

23   you any medication that affects your mental processes?

24             THE DEFENDANT:  No, your Honor.

25             THE COURT:  Okay.  You are not prescribed anything for

LAZNTRUP

1    anxiety?

2              THE DEFENDANT:  I am prescribed medication, but --

3              THE COURT:  What is that?

4              THE DEFENDANT:  Clonazepam.

5              THE COURT:  That's a benzodiazepine, right?

6              THE DEFENDANT:  Correct.

7              THE COURT:  Anything else that has any effect on your

8    mental processes?

9              THE DEFENDANT:  No, your Honor.

10             THE COURT:  Other than what you have already told me,

11   the anxiety, do you have any condition that could affect your

12   ability to think or to understand or to make judgments or

13   decisions on your own behalf?

14             THE DEFENDANT:  No, your Honor.

15             THE COURT:  Do you have any condition that affects

16   your ability to see or hear?

17             THE DEFENDANT:  No, your Honor.

18             THE COURT:  Have you taken your -- I am going to

19   mispronounce it now -- Clonazepam as prescribed within the last

20   24 years?

21             THE DEFENDANT:  I have, your Honor.

22             THE COURT:  Is your mind clear this morning?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Have you taken any other drugs, medicine,

25   or pills that affect your mental processes within the last 24

LAZNTRUP

1  hours?

2          THE DEFENDANT:  I have not, your Honor.

3          THE COURT:  Have you consumed any alcohol within the

4  last 24 hours?

5          THE DEFENDANT:  I have not.

6          THE COURT:  Do you understand what we are doing in

7  this courtroom this morning?

8          THE DEFENDANT:  I do, your Honor.

9          THE COURT:  Does either counsel have any objection to

10  the defendant's competence to plead at this time?

11          MR. CAPOZZI:  No, your Honor.

12          MR. UDELL:  No, your Honor.

13          THE COURT:  Thank you.

14          Mr. Truglia, have you received a copy of the

15  indictment in this matter?  The indictment is the document

16  containing the formal legal charges against you?

17          THE DEFENDANT:  I have, your Honor.

18          THE COURT:  Have you read it?

19          THE DEFENDANT:  Yes, I have, your Honor.

20          THE COURT:  Would you like me to read it to you today?

21          THE DEFENDANT:  I don't think that's necessary.

22          THE COURT:  Do you understand what it says you did?

23          THE DEFENDANT:  I do understand what it says, your

24  Honor.

25          THE COURT:  Have you had time to talk with your

LAZNTRUP

1    attorneys about these charges and about how you wish to plead?

2              THE DEFENDANT:  Yes, I have.

3              THE COURT:  Are you satisfied so far with your

4    attorney's representation of you?

5              THE DEFENDANT:  Yes, I am, your Honor.

6              THE COURT:  What I am going to do now is I am going to

7    explain certain constitutional rights that you have as a

8    criminal defendant but that you will be giving up if you enter

9    a guilty plea.

10             Again, please listen carefully.  If you don't

11   understand something that I am saying to you or if you just

12   want a moment to consult with your counsel, stop me, and either

13   I or your counsel will explain the issue more fully.

14             Under the Constitution and laws of the United States,

15   you have a right to plead not guilty to all of the charges

16   against you.

17             Do you understand that?

18             THE DEFENDANT:  I do, your Honor.

19             THE COURT:  Under the Constitution and laws of the

20   United States, if you plead not guilty, you would be entitled

21   to a speedy and public trial by a jury of those charges.  At

22   trial you would be presumed innocent.  The government would be

23   required to prove you guilty beyond a reasonable doubt before

24   you could be convicted.

25             You could not be convicted unless a jury of 12 people

LAZNTRUP

1    agreed unanimously that you were guilty beyond a reasonable

2    doubt.

3            Do you understand that?

4            THE DEFENDANT:  I do understand, your Honor.

5            THE COURT:  If you went to trial, then at that trial

6    and at every stage of the case, you would have you the right to

7    be represented by an attorney.  If you could not afford an

8    attorney, an attorney would be appointed to represent you at

9    government expense.

10           Even if you retained private defense counsel but then

11   ran out of money, an attorney would be appointed to represent

12   you at that point at government expense.  You would be entitled

13   to an attorney all the way through trial, not just for a guilty

14   plea, so your decision to plead guilty should not depend on

15   whether you can afford an attorney.

16           Do you understand that?

17           THE DEFENDANT:  I do understand, your Honor.

18           THE COURT:  During trial, the witnesses for the

19   prosecution would have to come to court and testify, where you

20   could see them and hear them and your lawyers could

21   cross-examine them.  If you wanted, your lawyer could offer

22   evidence on your behalf as well.  They would be able to use the

23   Court's power, known as subpoena power, to compel witnesses to

24   come to Court to testify even if they did not want to be there.

25           Do you understand that?

LAZNTRUP

1           THE DEFENDANT:  I understand, your Honor.

2           THE COURT:  At trial, you would have the right to

3    testify in your own defense if you and your counsel wished to

4    do so.  You would also have the right not to testify, and if

5    you chose not to testify, that could not be used against you in

6    any way.  No inference or suggestion of guilt would be

7    permitted from the fact that you chose not to testify.

8           Do you understand that?

9           THE DEFENDANT:  I do, your Honor.

10           THE COURT:  If you were convicted at trial, you would

11    have the right to appeal that verdict to a higher court.

12           Do you understand that?

13           THE DEFENDANT:  I do, your Honor.

14           THE COURT:  As I said before, you have the right to

15    plead not guilty, even today.  Although you came here for the

16    purpose of entering a guilty plea, you have the right to change

17    your mind, to persist this your not-guilty plea, and to proceed

18    toward trial.

19           But if you do plead guilty, and if the Court accepts

20    your plea, you will give up the right to a trial and the rights

21    that go with it that I just described to you.  If you plead

22    guilty, there will not be any trial.  All that will remain to

23    be done will be to impose a sentence.  You and the government

24    will be able to make various arguments about what that sentence

25    should be, but there won't be a trial to determine whether you

LAZNTRUP

1  are guilty or not guilty of any charge to which you plead

2  guilty.

3         Do you understand that?

4         THE DEFENDANT:  I do, your Honor.

5         THE COURT:  Finally, if you do plead guilty, you are

6  giving up the right not to incriminate yourself.  I will ask

7  you questions about what you did, and you will be required to

8  answer those questions truthfully.  That's so that I can

9  satisfy myself that you are actually guilty.

10        So, by pleading guilty, you will be admitting what

11  lawyers call your factual guilt as well as your legal guilt.

12        Do you understand that?

13        THE DEFENDANT:  I do, your Honor.

14        THE COURT:  Taking a look at the indictment in your

15  case -- here it is -- I see that Count One charges you with

16  participating in a conspiracy to commit wire fraud, in

17  violation of Title 18 of the United States Code, Section 1349.

18        I am going to ask Mr. Capozzi, the assistant United

19  States Attorney, to state the elements of that charge.  The

20  elements, Mr. Truglia, are the things that the government would

21  have to prove at trial.

22        Counsel?

23        MR. CAPOZZI:  Your Honor, at trial, the government

24  would need to prove beyond a reasonable doubt the following two

25  elements:

LAZNTRUP

1          First, that two or more persons in some way or manner

2     agreed to try to accomplish a common and unlawful plan to

3     commit wire fraud as charged in the indictment; and

4          Second, the defendant knew the unlawful purpose of the

5     plan and willfully joined in it.

6          The substantive crime of wire fraud has three

7     elements:

8          First, that there was a scheme or artifice to defraud

9     or to obtain money or property by materially false and

10    fraudulent pretenses, representations or promises;

11         Second, the defendant knowingly and willfully

12    participated in the scheme or artifice to defraud with

13    knowledge of its fraudulent nature and with specific intent to

14    defraud; and

15         Third, that in execution of that scheme the defendant

16    used or caused the use of the mail or interstate wires.

17         In addition, at trial the government would need to

18    establish that venue is proper in the Southern District of New

19    York by a preponderance of the evidence.

20         THE COURT:  Thank you.

21         Mr. Truglia, I am now going to go over with you the

22    maximum possible penalty for the crime charged in Count One.

23    The maximum means the most, the most that could be imposed.

24    This is not necessarily what you will receive.  However, by

25    pleading guilty you are exposing yourself to the possibility of

LAZNTRUP

1    receiving a punishment up to the maximum that I'm about to

2    describe.

3            Do you understand that?

4            THE DEFENDANT:  I do, your Honor.

5            THE COURT:  The maximum term of imprisonment for the

6    crime charged in Count One is 20 years, 20 years in prison,

7    which could be followed by up to three years of supervised

8    release.

9            Now, if your sentence does include supervised release,

10   what that means is you will be subject to supervision by the

11   probation department after your release from custody.  If you

12   are on supervised release but violate any condition of that

13   supervised release, the Court could revoke the term of

14   supervised release previously imposed and return you to prison

15   without giving you credit for time previously on postrelease

16   supervision.

17           In addition to these restrictions on your liberty, the

18   maximum possible punishment for the crime charged in Count One

19   includes financial penalties.  In this case, the maximum fine

20   is $250,000 or twice the profits of the criminal activity or

21   twice what someone other than yourself lost because of the

22   criminal activity, whichever is greater.

23           I am also required by law to tell you that there is an

24   additional special assessment of $100 which is required to be

25   imposed on each count of conviction.

LAZNTRUP

1          In this case, you will also be required to pay

2   restitution to any victims of the crime in an amount that the

3   Court decides is required to compensate them for any injuries.

4          And, by pleading guilty, you will admit to the

5   forfeiture allegations in the indictment.  Specifically, you

6   will agree to forfeit, pursuant to Title 18 of the United

7   States Code Section 1981(a)(1)(C), and Title 18 of the United

8   States Code Section 2461(c) a sum of money equal to $983,010.72

9   in United States currency, representing the amount of proceeds

10  traceable to the commission of the offense.

11         Now, you told me a few minutes ago that you are a

12  citizen of the United States, correct?

13         THE DEFENDANT:  That is correct, your Honor.

14         THE COURT:  The reason I asked you that question is

15  because if you were not a U.S. citizen your guilty plea would

16  likely have adverse consequences for your ability to remain in

17  or return to the United States, including removal, deportation,

18  denial of citizenship and denial of admission to the U.S. in

19  the future.

20         Your removal or deportation could be mandatory, and if

21  that did happen, you would still be bound by your guilty plea

22  regardless of any advice received from your counsel or from

23  others regarding the immigration consequences of your plea.  I

24  am required to advise all defendants of these facts whether or

25  not they tell me that they are United States citizen.

LAZNTRUP

1              Do you understand that?

2              THE DEFENDANT:  I do, your Honor.

3              THE COURT:  Has anyone threatened you or coerced you

4    in any way to get you to plead guilty?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  I understand that there is a written plea

7    agreement between you and the government.

8              Mr. Quintero, do you have that agreement?

9              THE DEPUTY CLERK:  Yes, your Honor.

10             THE COURT:  Thank you very much.  It is dated October

11   14.  It is addressed to your attorney, and it looks like both

12   your attorney and you have signed it on the last page, which I

13   am holding up.

14             Is that your signature, sir?

15             THE DEFENDANT:  It is, your Honor.

16             THE COURT:  Did you read the agreement before you

17   signed it?

18             THE DEFENDANT:  I did, your Honor.

19             THE COURT:  Did you discuss it with your attorney?

20             THE DEFENDANT:  Yes, I did, your Honor.

21             THE COURT:  Do you understand its terms?

22             THE DEFENDANT:  Yes, I do, your Honor.

23             THE COURT:  Has anyone promised you anything or

24   offered you anything other than what is in your written plea

25   agreement in order to get you plead guilty?

LAZNTRUP

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  I see that in your plea agreement,

3    specifically, on page 3, it says that you and the government

4    have reached agreement regarding the appropriate calculation of

5    your sentence under a part of our law known as the sentencing

6    guidelines.

7          Is that right?

8          THE DEFENDANT:  That's correct, your Honor.

9          THE COURT:  And what it says here is that the

10   appropriate guidelines sentencing range for you will be from 51

11   to 63 months' imprisonment.

12         It also says that the appropriate fine range for you

13   is from $20,000 to $200,000.  Do you understand that under the

14   agreement neither you nor the government is allowed to argue to

15   the sentencing judge for a calculation that is different from

16   the one that I just summarized for you?

17         THE DEFENDANT:  I do, your Honor.

18         THE COURT:  Excuse me.  Do you also understand that in

19   this agreement you have limited your right to appeal from your

20   sentence if that sentence is within the guidelines range.

21   Specifically, as long as Judge Hellerstein sentences you to a

22   prison term of no longer than 63 months, any lawful sentence of

23   supervised release, and a fine no greater than $200,000, you

24   are giving up your right to challenge your sentence, whether by

25   direct appeal, writ of habeas corpus, or otherwise.

1              Do you understand that?

2              THE DEFENDANT:  I do, your Honor.

3              THE COURT:  Do you understand that, under the terms of

4    your plea agreement, even if you later learn that the

5    government withheld from your counsel certain information that

6    would have been helpful to you in defending yourself at trial,

7    you will not be able to withdraw your guilty plea on that

8    basis?

9              THE DEFENDANT:  I do understand, your Honor.

10             THE COURT:  Do you understand that the terms of this

11   plea agreement, including the calculations relating to

12   sentencing, are not binding on the sentencing judge?

13             THE DEFENDANT:  I understand, your Honor.

14             THE COURT:  Judge Hellerstein could reject those

15   calculations and could impose a more severe sentence than you

16   expect without permitting you to withdraw your plea of guilty.

17   That's because the sentencing judge is required to make his own

18   independent calculation of the appropriate sentencing range

19   under the guidelines.  He will also have the discretion to give

20   you a sentence below that range or above that range, up to the

21   maximum that we discussed earlier.

22             In addition to the guidelines and possible departures

23   from the guidelines, the sentencing judge will also consider

24   all of the factors set forth at 18 United States Code, Section

25   3553(a).  In other words, the sentencing judge will pronounce

LAZNTRUP

whatever sentence he believes is the appropriate sentence for you, even if it is different from the range set forth in your plea agreement.

Do you understand that?

THE DEFENDANT:  I do, your Honor.

THE COURT:  The Court will also consider a presentence report that will be prepared by the probation department in advance of your sentencing.  Both you and the government will have an opportunity to review that report before you are sentenced and will be able to challenge the facts reported by the probation officer.

Mr. Truglia, do you understand that in the federal system there is no parole?

THE DEFENDANT:  I do, your Honor.

THE COURT:  What that means is that if you are sentenced to prison, you will not be released early on parole.

Before I go on, let me ask both counsel, beginning with the government, are there any other provisions in the plea agreement you would like me to go over with the defendant?

MR. CAPOZZI:  No, your Honor.  Thank you.

MR. UDELL:  No, your Honor.

THE COURT:  All right.

Mr. Truglia, you have been advised of the charges against you, the possible penalties you face, and the rights that you are giving up.

LAZNTRUP

1          Is it still your intention to plead guilty to Count

2      One of the indictment?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Is your plea voluntary and made of your

5      own free will?

6          THE DEFENDANT:  It is, your Honor.

7          THE COURT:  Would you stand up, please.

8          Mr. Truglia, with respect to Count One of the

9      indictment in this matter, how do you plead?

10         THE DEFENDANT:  Guilty, your Honor.

11         THE COURT:  You may be seated.

12         Can you tell me in your own words what you did that

13     makes you guilty of that crime.

14         THE DEFENDANT:  On January 7, 2018, I made a terrible

15     mistake for which I am very ashamed of.  While sitting at home,

16     I was contacted online by an acquaintance, who wrote to me and

17     asked if I would let him use an account I had on a

18     cryptocurrency exchange known as Binance.

19         THE COURT:  Known as?

20         THE DEFENDANT:  It's called Binance.

21         THE COURT:  Can you spell that.

22         THE DEFENDANT:  B-i-n-a-n-c-e.

23         THE COURT:  Thank you.  Go ahead.

24         THE DEFENDANT:  After I agreed, the individual then

25     added me to a Skype video call with several other participants

 1    whom I didn't know.  I now understand that at least one of
 2    these people was located in the Southern District of New York.
 3    On the Skype call, my acquaintance shared his computer screen,
 4    and I could see that I had a cryptocurrency wallet containing
 5    about $20 million or more of a cryptocurrency called Triggers.
 6                THE COURT:  You are going to have to spell that too.
 7                THE DEFENDANT:  T-r-i-g-g-e-r-s.
 8                THE COURT:  Thank you.
 9                THE DEFENDANT:  That $20 million valuation was based
10    on the price of Triggers at that time.  I understood that he
11    had stolen this wallet by hacking a victim's online account.  I
12    also understood that Binance was a cryptocurrency exchange that
13    traded Triggers and that my acquaintance wanted to access a
14    Binance account so that he could convert the stolen Triggers
15    into Bitcoin and ultimately U.S. dollars.
16                So I allowed my acquaintance to access my Binance
17    account so that he could withdraw Triggers from the stolen
18    wallet.  After he deposited some of the stolen Triggers into my
19    account, he exchanged them into Bitcoin and then transferred
20    the Bitcoin back to himself.  He left a smaller remainder of
21    Bitcoin for me as a fee.
22                He then continued to deposit more Triggers into my
23    account with the intention of again transferring the proceeds
24    back to himself and leaving a portion for me.  But at some
25    point I revoked his continued access to the account and kept

LAZNTRUP

1   for myself the additional money he had deposited.  The

2   individual did not send me any more money after that.

3           All of this occurred within a few hours on the same

4   night, January 7, 2018.  I know that my actions were wrong, and

5   I'm deeply sorry for what I did.

6           THE COURT:  I note that you are looking at some notes.

7   Did your attorney help prepare the testimony that you just

8   gave?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Do you adopt those words as your own?

11          THE DEFENDANT:  I do, your Honor.

12          THE COURT:  Is everything that you just told me true?

13          THE DEFENDANT:  It is, your Honor.

14          THE COURT:  And you say that you understood that one

15  or more of the participants on the Skype call was here in the

16  Southern District of New York?

17          THE DEFENDANT:  That's correct, your Honor.

18          THE COURT:  Where were you at the time?

19          THE DEFENDANT:  I was in New Jersey, your Honor.

20          THE COURT:  All right.  Mr. Udell, do you believe that

21  that is a sufficient factual predicate for the guilty plea?

22          MR. UDELL:  I do, your Honor.

23          THE COURT:  And Mr. Capozzi?

24          MR. CAPOZZI:  I do, your Honor.

25          THE COURT:  All right.

LAZNTRUP

1          Are there any other questions either counsel would
2    like me to ask the defendant?
3          MR. UDELL:  No, your Honor.
4          MR. CAPOZZI:  No, your Honor.
5          THE COURT:  Does the government represent that it has
6    sufficient evidence to establish guilt beyond a reasonable
7    doubt at trial, and would you like to make a proffer?
8          MR. CAPOZZI:  Yes, your Honor.  Thank you.
9          If this case were to proceed to trial, the evidence
10   would include phone records reflecting the unlawful accessing a
11   victim's phone account, cryptocurrency exchange records
12   reflecting the unauthorized and unlawful withdrawal of the
13   victim's cryptocurrency into various accounts controlled by the
14   coconspirators, bank records showing subsequent movement of the
15   stolen proceeds, text records among the coconspirators
16   concerning the scheme, e-mail records reflecting the proceeds
17   as well as the operation of the scheme, iCloud records, records
18   found on computers, as well as testimony concerning the SIM
19   swap and subsequent theft of Triggers from the victim.
20         THE COURT:  These records with regard to the proceeds,
21   they support the forfeiture figure of approximately $983,000.
22         MR. CAPOZZI:  They do, your Honor.
23         THE COURT:  All right.  Thank you very much.
24         Mr. Truglia, on the basis of your responses to my
25   questions and my observation of your demeanor, I find that you

LAZNTRUP

1    are competent to enter a guilty plea.

2            I am satisfied that you understand your rights,

3    including your right to go to trial, and that you are aware of

4    the consequences of your plea, including the sentence that may

5    be imposed.

6            I'm also satisfied that you are voluntarily pleading

7    guilty and that you have admitted that you are guilty as

8    charged in Count One of the indictment.  For these reasons, I

9    will recommend that the district judge accept your plea.

10           I will ask the government to order a copy of the

11    transcript and submit it to Judge Hellerstein together with the

12    additional paperwork that he will require to act on the

13    recommendation.

14           Has the district judge set a sentencing date?

15           MR. CAPOZZI:  No, your Honor.  The district court

16    chambers encouraged the parties to contact them about setting a

17    specific date after this plea proceeding.

18           THE COURT:  All right.  Well, we'll give you a control

19    date in the meantime.  The defendant is out on bail, correct?

20           MR. CAPOZZI:  Correct, your Honor.

21           THE COURT:  Six months, Mr. Quintero.

22           THE DEPUTY CLERK:  April 28.

23           THE COURT:  I will give you a control date of April

24    28, 2022.  But, of course, the district judge, once he hears

25    from you, will give you an actual sentencing date.

LAZNTRUP

1              I will direct that the presentence report be prepared.

2    I will direct the government to deliver the case summary for

3    purposes of the presentence report to the probation department.

4              Can you do that within 14 days, Mr. Capozzi?

5              MR. CAPOZZI:  Yes, your Honor.

6              THE COURT:  Mr. Udell, can you be available for

7    interview by the probation department -- well, you are not the

8    one they are going to be interviewing -- with your client --

9              MR. UDELL:  Yes.

10             THE COURT:  -- within the next 14 days?

11             MR. UDELL:  Of course, your Honor, yes.

12             THE COURT:  Thank you very much.

13             Any objections to continuing the present conditions of

14   release?

15             MR. CAPOZZI:  No, your Honor.

16             THE COURT:  All right.  Mr. Truglia, let me remind you

17   that all of the conditions on which you have been released up

18   until now continue to apply.  As I am sure you have in mind, a

19   violation of those conditions would have serious consequences,

20   including revocation of bail, and prosecution for bail jumping.

21             Do you understand that?

22             THE DEFENDANT:  I understand, your Honor.

23             THE COURT:  All right.

24             Anything further from the government?

25             MR. CAPOZZI:  No, thank you, Judge.

LAZNTRUP

1          THE COURT:  From the defense?

2          MR. UDELL:  No, your Honor.  Thank you.

3          THE COURT:  Thank you, gentlemen, ladies.

4          We'll be adjourned.

5          MR. UDELL:  Thank you.

6          (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25