```
     MC1BTRUS
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
3    UNITED STATES OF AMERICA,
4              v.                            19 Cr. 921 (AKH)
5    NICHOLAS TRUGLIA,
6
7                   Defendant.
8                                            Sentence
     ------------------------------x
9
                                             New York, N.Y.
10                                           December 1, 2022
                                             2:30 p.m.
11
12   Before:
13
                   HON. ALVIN K. HELLERSTEIN,
14
                                             District Judge
15
                              APPEARANCES
16
     DAMIAN WILLIAMS
17        United States Attorney for the
          Southern District of New York
18   BY:  TIMOTHY V. CAPOZZI
          Assistant United States Attorney
19
     JEFFREY UDELL
20   ADAM COHEN
          Attorneys for Defendant
21
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

MC1BTRUS

1          (Case called; appearances noted)

2          THE COURT:  Mr. Capozzi yesterday I suggested you
3  might want to create an order of restitution.  Have you done
4  that?

5          MR. CAPOZZI:  Yes, I have, your Honor.  And I have it
6  here signed by the parties for the Court.

7          THE COURT:  Please hand it up.

8          I'd like to cross out in paragraph four, subparagraph
9  two, the money should be committed now, even though it may not
10 be payable for 50 days, and so this should not be affected by
11 any material change.  The defendant can enter the sources.  May
12 I do that, Mr. Udell?

13         MR. UDELL:  Your Honor.  Give me one moment. I'm just
14 going to try to pull up my copy of the order.  I don't have a
15 hard copy.  Thank you.

16         THE COURT:  I propose to put a period after mailing
17 address on the fourth line and scratch the balance.

18         MR. UDELL:  Got you.  Let me discuss it with
19 Mr. Truglia.

20         (Counsel and defendant conferred)

21         MR. UDELL:  No objection, your Honor.

22         THE COURT:  Should there be a provision that this is
23 full restitution instead of paragraph five?  In paragraph two
24 I'd like to strike the first three lines.  So the sentence will
25 read:  Defendant shall pay restitution in a manner and

MC1BTRUS

according to the schedule that follows pursuant to the statute, and then I want to add, Upon payment full restitution will have been made.

    MR. CAPOZZI:  No objection, your Honor.

    MR. UDELL:  No, objection, your Honor.

    THE COURT:  Do we need paragraph five?

    MR. CAPOZZI:  Your Honor, I believe that language is standard in our proposed restitution orders, and it allows again for --

    THE COURT:  Yeah, but we're getting full payment.

    MR. CAPOZZI:  I think all parties expect we'll have full payment.  But in the event that something happens between now and 60 days and it doesn't occur, I think that language would provide a safeguard.

    THE COURT:  Are you satisfied with paragraph five, Mr. Udell?

    MR. UDELL:  If I may have a moment with my client.

    THE COURT:  There's one other thing before you speak.  We've had an order of forfeiture.  We should provide that this does not effect the order of forfeiture.

    MR. CAPOZZI:  Correct, your Honor.

    (Counsel and defendant conferred)

    MR. UDELL:  Your Honor, with respect to paragraph five, we have no objection to leaving it in there as the government suggests.  That's absolutely fine with us.

MC1BTRUS

1             THE COURT:  All right.
2             MR. UDELL:  And there was another one pending on
3    forfeiture, were we adding language?
4             THE COURT:  I'm adding a sentence at the beginning of
5    paragraph four, this order shall not effect the forfeiture
6    provided by yesterday's order.
7             MR. UDELL:  No objection to that, your Honor.
8             THE COURT:  Mr. Truglia, this is dated as December 2.
9             MR. UDELL:  I think that's his handwriting.  It was
10   meant to be a one.  You can correct that though.
11            THE COURT:  I'll give it back to you to correct it,
12   and could you see the change is made.
13            MR. UDELL:  Your Honor, would you like us to initial
14   the changes he made on there or no, or just that?
15            THE COURT:  Sorry.
16            MR. UDELL:  Would you like us to initial handwritten
17   changes that you made on the order or just the date?
18            THE COURT:  Initial, please.  You'll file this order
19   of restitution.  Does either counsel want to say anything more?
20            MR. UDELL:  With respect to restitution, no, your
21   Honor.
22            THE COURT:  No, anything, cause the next thing I want
23   to do is to listen to Mr. Truglia.
24            MR. UDELL:  Well, yes, your Honor.  I think we do want
25   to say some more.  Yesterday your Honor quite thoughtfully

MC1BTRUS

suggested that we take this adjournment so that we could come up with the suggestion or proposal for a plan for Mr. Truglia with respect to his future after incarceration.  First thing I want to say is thank you, your Honor, for the time you took and the thoughtfulness to suggest that, and the opportunity given to us to do that.

I will say that we certainly had given some thought to that beforehand, and some of that is going to be in his remarks that you'll hear. But given the time afforded by your Honor, we went back and we did a lot more thinking and consulting frankly with Dr. Katz on that, and we have a very fulsome plan that we'd like to tender for your Honor's consideration right now. And with the Court's permission, I like to let Mr. Cohen present that to the Court.

THE COURT:  Yes, thank you.

MR. COHEN:  Thank you, your Honor, for the opportunity to present this plan.  As Mr. Udell mentioned, we heard what your Honor said yesterday, and we all agree, and Mr. Truglia agrees, that Nick needs a plan for how he's going to get on the right path.

And Mr. Truglia has expressed to us, and he's going to express to the Court soon as Mr. Udell just said in remarks that Mr. Truglia prepared himself that he wants to get on that good path.  And so we worked with Dr. Katz and we developed this plan.

MC1BTRUS

So first, Nick will immediately begin intensive therapy under the care of a highly qualified psychologist with expertise in autism. And Dr. Katz will provide recommendations for therapists. This would be a minimum of twice per week to start, and it would increase if the psychologist believes it's necessary.

As Dr. Katz explained to us, the goal of therapy would be for Nick to learn to understand the consequences of his behaviors, how his behaviors effect others, and the emotional impact that his actions have on others.

These are skills, these are skills, that Nick needs to learn. Per Dr. Katz because Nick is very intelligent, he's high-functioning and motivated to improve, he has the capacity to learn, improve and gain these skills. And the therapist could provide regular updates to probation, and this of course would be all at Nick's expense.

The second is another recommendation from Dr. Katz, and it's called work therapy, and it's a special therapy that utilizes work, either paid or volunteer work as a therapeutic agent. And in Nick's case what that would mean is he would work, for example, helping under-privileged individuals, and then talk to a therapist about his experiences.

THE COURT: What kind of work did he have in mind?

MR. COHEN: Dr. Katz talked about things like working for Good Will or working for other organizations; for example,

MC1BTRUS

where you come face-to-face with under-privilege individuals that you see and get the positive feedback of your impacts that have on them in a positive way. So the goal of work therapy is for him to see in person that -- and he'll get good and positive examples of how his actions emotionally impact others positively, how his actions effect people's lives positively.

And Dr. Katz believes that this will help retrain Nick because he needs to unlearn some of the old dynamic that he had with his online friends, which was often about how they could outdo or best one another, and how often that came out in negative ways, which is the reason we're here. But this therapy will teach him the opposite, how to have good, healthy relationships based on helping people, not trying to outwit or best them.

And according to Dr. Katz, work therapy also will help teach Nick that he can get good feelings of accomplishment and develop healthy, good self-esteem through acts of helping others. And the work therapy will be done in tandem with his intensive psychological therapy that I just talked about so that the therapist could help guide him to the right work. That's first of all. So the therapist will have a role in deciding what type of work it will be. And also the therapist will help Nick learn the most from his work and help him get the maximum gains that he's getting out of those experiences.

And again, because Nick is so intelligent, he can

MC1BTRUS

learn.  He can get that positive feedback that he would get in this type of therapy.  And once again, this could be a part of the updates that go to probation.  And at the very minimum, this would mean that Nick was making a positive contribution to society.

The third thing is that Nick is committed to resuming his education, which again will accomplish two things.  The first is he'll acquire the skills needed to obtain gainful and productive employment; and the second is the self-improvement, that self-improvement through education will help his self-esteem and give him a sense of accomplishment.

And as Dr. Katz says, Nick should attend classes in person, not online so that it gives him the opportunity to interact with people. And his class schedule of course would be arranged to provide ample time for his therapies, which I just described, and he would apply immediately to schools near where he lives.

And fourth is a job.  For the time being, as we know, Nick does not need the money that he would earn from a job, but jobs are good because they could lead to fulfillment and the sense of accomplishment.  But Nick -- at first Nick wants to go to school and do work therapy during his free time, which will effectively give him that same sense of fulfillment and accomplishment.  If he does get a job, he'll seek one that requires him to be in person.

MC1BTRUS

So, your Honor, just in closing, I just want to add that Nick has already taken steps to improve and shown growth while he's been incarcerated. He's been at the very basic, he's been a model inmate with no incident reports as the PSR says in paragraph 12. And reflecting this, he was moved into dormitory housing, and he got a job in the kitchen, both of which are considered privileges reserved only for inmates who get them through good conduct.

But his job in the kitchen -- I want to talk about that job, because it means that Nick gets up early everyday. He gets up around 5 a.m., and lights off in the dorm is at midnight. So Nick gets up -- goes to sleep at midnight, and gets up at 5 a.m. everyday and works hard at his job.

And at the end of the day, he gets a sense of fulfillment that comes from working hard and being productive during the day. So, your Honor, Nick has already turned a corner. He's not spending his time -- he's not wasting his time. He's trying to improve, and that's what he will continue to do if you give him another chance.

And as Dr. Katz has found, has said in his report, he knows that -- he said that Nick is sincerely willing to improve, and that he acknowledges the problems in his life and perceives an acute need for help. But that with that right help, his prognosis is very good, and he really can get solidly on this good path.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

MC1BTRUS

THE COURT:  Thank you.  If nothing else is to be said by the lawyers, I'll hear Mr. Truglia.  You could sit there, Mr. Truglia.  Take off your mask.  Speak to me.

THE DEFENDANT:  Your Honor, I need to start off by saying, first of all, I'm sincerely sorry for what I did. There's no excuse for the crime that I committed, and I take full responsibility for my actions and for not doing the right thing when I had the chance to do that.

The following words, they really do reflect how I feel and my intentions moving forward.  And my lawyers, they didn't do much to assist in writing this.  They just read it over for grammar and stuff like that.

I want to address the victim first, Mr. Turpin. I apologize for the loss and the emotional stress I caused you and your wife.  I feel terrible about what I've done.  I constantly think about what I did and how I could ever do that to another human.  I never steal from anyone face-to-face.  So the fact that I did it on the internet is shameful.  This burden of guilt weighs heavily on my conscious everyday.

Now that I know what I have done, that the damage is tangible, I really am ashamed and sorry for what I did.  I can't change what's happened in the past, but I'm going to give my best effort to try and write my wrongs to you in anyway that's possible moving forward.

Next I would like to address friends and family.  I'm

MC1BTRUS

extremely sorry and remorseful for making you endure great pain and suffering that wasn't necessary.  The fact that those close to me paid and will continue to pay for my mistakes is what's hardest for me, and my selfishness not only affected the victim's life, but the lives of all those around me.

To the Court, your Honor.  This has been an eyeopening experience.  The justice system has taught me a lot.  It shed light upon personal issues I'd previously not known to exist, and I've spent this time in incarceration reflecting upon my life, my actions, and why I stand before you today. Consequentially, I was able to see that I was not the person that I wanted to be.

I looked in the mirror and saw a person who I was unfamiliar with, a person that I did not like.  I was shaken by the realization of the mistakes that I made.  But I have turned my incarceration and distance from the public into a positive step within the grander scheme of life.  And it was a chance to really hit the brakes, zoom out and work on myself for the past four years.

In the past 12 months I've spent in the Essex County facility have been particularly focused on intro-inspection for me.  I've made what I believe to be good progress so far, even though I am still not perfect.  I see more clearly the difference between right and wrong, and I realize that I should always treat others the exact way that I want to be treated

MC1BTRUS

myself. I know that moving forward I must follow the rules or I will end up in prison again. I now see that I must give my best effort to right all of my wrongs.

Part of this self-improvement entailed self-education, and that meant for me over the course of being incarcerated, reading over 60 nonfiction books and textbooks since 2019, and I'm committed to education, like my lawyers stated earlier. So one of my priorities is to resume my undergraduate studies and attain a degree.

By doing that, I hope I'll be able to learn things that are necessary in order to live a life that is productive and not criminal. I'm also extremely grateful that I was blessed with the opportunity of speaking to Dr. Katz in order to learn more about myself and receive a diagnosis from him. Now having recognized these personal issues, I want to fix at the source what I think caused my judgment to lapse so terribly, and that's why I'll be seeking therapy in order to make strides and treat those issues by consulting with professionals, however much is needed.

I'm committed to rehabilitation. I'm committed to the hard work and cultivation of self that will be required of me, and I will never allow myself to be involved in that kind of activity ever again. Knowing what I know now, I would go to therapy even if it wasn't your order because I'm truly committed to changing my life. I realize that I'll have to

MC1BTRUS

1   show the world that they can trust me again, and I've been
2   thinking hard about what I have to do in order to live a
3   productive, law-abiding life, and how I'm going to add
4   positively to society.
5           My resulting hope is to one day after I've obtained an
6   undergraduate degree to possibly work in the cybersecurity
7   sector, and I believe that I can take what led to this and use
8   it to improve the world by helping people through that line of
9   work.
10          THE COURT:  What helping people?
11          THE DEFENDANT:  I believe I can take what led to this
12  and use it to improve the world by helping people through that
13  line of work.
14          THE COURT:  And that's securities?
15          THE DEFENDANT:  Cybersecurity.
16          MR. UDELL:  Cybersecurity; in other words, computer
17  security.
18          THE COURT:  You mean safeguarding people's computer
19  systems from intruders and hacks?
20          THE DEFENDANT:  Yes.
21          THE COURT:  Is that the line of study that you plan to
22  pursue?
23          THE DEFENDANT:  It's a possible change of education.
24  I'm ready to turn this page, and I'm determined to not let
25  things that I did in the past be the defining moments of my

MC1BTRUS

life. The moments that will define me in the years to come are going to be the positive accomplishment of tomorrow. However, this case will always serve as a reminder to me of what happens when you break the law, that you'll get caught, and that you'll go to prison. Prison is where I've spent a great deal of time and that stark message will guide me for the rest of my life.

This result is entirely my fault, and I'm well-aware of that, but I desperately want to begin my adult life for the first time so that I can build something positive. I was only 20 years old when I foolishly committed this crime. And since then, I believe I've changed for the better. I'm now 25. I've been frozen in place for years that are now lost to time. I hope that the Court can see what I see, even after all of the mistakes that I've made, which is hope for my future; that I can really add instead of take from society, and that I am not the person news media has painted me out to be.

Even though I'm doing my best to work on myself here in jail, the therapy that I would like to get is not offered there. I'm fully prepared to accept the Court's sentence, whatever it may be. However, I humbly plead that your Honor afford me a chance to bring my ideas to fruition as soon as possible, and for a chance to show that I can function as a contributing member of society. Thank you.

THE COURT: Thank you, Mr. Truglia.

Mr. Udell, are any members of his family here or

MC1BTRUS

others?

    MR. UDELL:  There are not, your Honor.

    THE COURT:  I will take a few minutes recess.

    (Recess)

    THE COURT:  Be seated, please.

    Mr. Truglia, all sentences are difficult. The judge is asked to put together a number of factors that don't compliment one another.  They pull us in different ways.  They're suppose to reflect the seriousness of a crime, but also the individual makeup of the person committing the crime.  We're suppose to have our sentence reflect respect for the community and respect by the community.  We're supposed to deter others and deter the defendant himself.  There are no numbers attached to this.

    The guidelines put on a number which is advisory of 51 to 63 months in custody followed by one to three years of supervised release.  Those are guidelines that are not imperatives.  I'm impressed by the willingness that you have shown in paying back the victim.  I'm impressed by your statement.  I'm impressed by what your lawyers have said about you, but there's also this aspect of the crime.  It's too much. And when people have their identity stolen, there's few other things that could make such an impact on their lives.

    I think the right sentence is 18 months.  It takes into consideration what I've said about you in making restitution, in suffering a forfeiture loss of almost a million

MC1BTRUS

dollars, $983,000, but it also shows respect for the community and the law.  You've already served 12 months approximately.  And then I sentence you after that to three years of supervised release subject to various conditions I'll read out.

First, there are the mandatory conditions on page 29 of the PSIR.  I don't think, Mr. Udell, we need a drug testing condition.  I would suspend it.  You think that's the right thing?

MR. UDELL:  No objection to that, your Honor.

THE COURT:  Well, does he need a check on his use of controlled substance?

MR. UDELL:  Your Honor, let me talk to him for one second about that.

(Counsel and defendant conferred)

MR. UDELL:  Your Honor, no objection to dispensing with the requirement of the treatment.

THE COURT:  That will be suspended.  The other mandatory conditions are imposed.

Next there are 12 standard conditions on pages 29 and 30, and I impose them.  Then on the bottom of page 30 there's a special condition, participation in an outpatient mental health program approved by the United States probation officer.

You can recommend the program that you've outlined, but the probation officer has discretion to review them.  Specification two on page 31 is participation in an outpatient

MC1BTRUS

    treatment program, and that's for drugs or alcohol.  I'll leave that in, and it will be subject to the discretion of the probation officer.

    I don't think there's any need for three since Mr. Truglia is making the payments, so we'll add a few words to the beginning of paragraph three on page 31.  Provided that the restitution payments provided in a separate order filed this day are satisfied, then the rest of the sentence. We don't need four.  I'm striking four.

    And given Mr. Truglia's background, I will leave in condition five, and that you are to be supervised by the district of your residence.  There's a special assessment that's mandatory of $100 which will be due upon the filing of the judgment.  We have filed the order of restitution.  I don't need to make any additional finding on that, except that it's been ordered and it will satisfy in full the obligation to the victim.

    Page 32 paragraph provides that you are to notify the probation officer of any change in address.  That's a paragraph that we've already provided in the order of restitution.  It doesn't need to be repeated.  I'm scratching the first full paragraph on page 32.

    MR. UDELL:  Second full paragraph, your Honor.

    THE COURT:  It's the first full paragraph on page 32. Since we have an order of restitution, I'm going to provide

MC1BTRUS

that the provisions of the order of restitution are incorporated.

MR. UDELL:  Your Honor, just to be clear, the paragraph you're striking is the one that beings your liability to pay, right?

THE COURT:  I'm striking the whole section.

MR. UDELL:  Okay.

THE COURT:  That goes until the period of fines.  I am not imposing a fine in light of the full restitution and the forfeiture, and the forfeiture have been provided by a separate order that I filed yesterday, and defendant's detention shall be continued.

Mr. Truglia, under the Constitution, you have the right to appeal.  You should discuss with Mr. Udell whether or not you wish to appeal.  And Mr. Udell if your client wishes to appeal, I order you to do so on a timely basis.  If you can't afford a lawyer, the government will provide a lawyer free of charge.  Are there underlying counts?

MR. CAPOZZI:  Yes, your Honor, and the government would move to dismiss.

THE COURT:  They are to be dismissed.  Thank you.  I think we're finish.

MR. UDELL:  Your Honor, may I just have one moment to speak to Mr. Truglia before we go off the record.

THE COURT:  Before we go off the record, I want to

MC1BTRUS

say, Mr. Truglia, that you are at the beginning of your adult life. You can write the check on yourself. Is it a good check that will give you honor and fulfillment and security and opportunity to love and be loved, or is it a check that will bounce back and hurt you every moment. This is all under your control. I think from your statement, from what the lawyers have said and what you've done that you understand the gravity of your offense, that you understand where your life had been headed and you have changed it. I congratulate you for that, and I wish you the best of luck in the future.

THE DEFENDANT: Thank you, your Honor.

MR. UDELL: Your Honor, if I can have one moment to speak to Mr. Truglia before we go.

THE COURT: Yes.

(Counsel and defendant conferred)

MR. UDELL: Your Honor, thank you for that. Thank you again for everything, your consideration and your thoughtful consideration in fashioning the appropriate sentence.

The one last thing I wanted to ask the Court to please put in the judgment is a recommendation for a designation, if applicable, and BOP of course will make the determination and calculations, but for designation to FCI Danbury. This is the low security FCI Danbury Connecticut facility.

THE COURT: Where is he detained now?

MR. UDELL: He's in Essex County because the MCC is

```
     MC1BTRUS
1    obviously no more.
2             THE COURT:  We shall do that.  So recommended.
3             MR. UDELL:  Thank you.
4             THE COURT:  Goodbye, everyone.
5             (Adjourned)
```