**EXHIBIT A**

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                            19 Cr. 921 (AKH)

NICHOLAS TRUGLIA,
                                        V.O.S.R.
               Defendant.
------------------------------x
                                        New York, N.Y.
                                        August 2, 2023
                                        11:30 a.m.

Before:

              HON. ALVIN K. HELLERSTEIN,

                                        U.S. District Judge

                    APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
TIMOTHY CAPOZZI
     Assistant United States Attorney

MARK GOMBINER
     Attorney for Defendant

Also Present:

Michael Melaika, Probation Officer
```

1           (Case called; appearances noted)

2           THE COURT:  So we broke last time because Mr. Gombiner

3   wanted to discuss the case with Mr. Capozzi off the record and

4   see if there could be some common ground that would be

5   established.  So I'll let Mr. Gombiner report.

6           MR. GOMBINER:  I'm sorry, Judge.

7           THE COURT:  Just take off your mask, Mr. Gombiner.

8           Thank you.  Please.

9           MR. GOMBINER:  Well, we haven't completely reached a

10  resolution in this matter, but what the parties would propose

11  is that the government have until September 8 to determine

12  whether or not they wanted to seek a resentencing, at which --

13  to obtain that, they would have to establish that Mr. Truglia

14  has already fully failed to pay restitution.  That's under

15  statute 18, United States Code, section 3614(b).  Or whether

16  they would just want to proceed with the violation of

17  supervised release.

18          They can't do both.  They have to make a choice there.

19  So we are attempting --

20          THE COURT:  Why can't we do --

21          MR. GOMBINER:  Because if he was going to be -- he

22  can't be violated --

23          THE COURT:  I'd ask, Mr. Gombiner, does he want to

24  make the restitution?

25          MR. GOMBINER:  He wants to, yes.  And he would far

1  prefer to --

2  THE COURT: What does he need to do?

3  MR. GOMBINER: He needs to be able to access digital
4  -- it's a cryptocurrency --

5  THE COURT: I understand what it is. He needs his
6  access code.

7  MR. GOMBINER: He needs his access code.

8  THE COURT: They're located somewhere else. He's told
9  us New York. He's told us that he would need to travel to New
10  York to get them. He was given permission to do so. He didn't
11  go for his code, and from there he went to Miami, and
12  apparently got into more trouble there with the courts in Miami
13  or close to Miami. We've gained nothing.

14  I do not want to adjourn this. I think the government
15  has to -- well, I think Mr. Gombiner logically is correct,
16  Mr. Capozzi. If we're going to stand on the judgment, I can't
17  enforce the V.O.S.R. We're going to get a different judgment.
18  It means we abandoned the ability to enforce the existing
19  judgment.

20  I think the primary interest at this time is to obtain
21  restitution, and we don't need any new judgment to do that. We
22  have all the tools we need right now. So it seems to me that
23  we should proceed unless Mr. Gombiner comes up with an excuse
24  that suggests that we have to wait some more.

25  I don't understand how Mr. Truglia can ask for

1   permission to go New York to access his keys, and go to New
2   York, and then not deliver on his promise.
3             MR. GOMBINER:  Well, I can proffer an explanation,
4   Judge.  So my understanding is there are two places where -- or
5   actually maybe three places where these keys -- the keys to
6   this are located.  One is on an account maintained by Proton,
7   which I think is a company based in Switzerland.
8             Now, I talked to Pierce O'Donnell, who is the attorney
9   for Mr. Turpin, and he told me he had had very extensive
10  discussions with the legal department at Proton, and Proton
11  told him that the account has been permanently locked, because
12  of there was some suspicion that it was related to criminal
13  activity.
14            Now, so one suggestion I had was that either the
15  Court -- we could either -- I'm not sure Proton -- I don't
16  really -- am not sure about subpoenaing a foreign company.  I
17  haven't really done that that much.  But it would seem to me
18  either the government or the Court could possibly require
19  Proton to unlock the account for purposes of, you know,
20  obtaining this code.
21            Alternatively, Mr. Truglia did go to New York.  My
22  understanding is this is a 24 letter code that's in like three
23  separate --
24            THE COURT:  Places?
25            MR. GOMBINER:  -- strings of letters, and that he did

1  -- he went with Mr. O'Donnell, and he did give him two of those
2  three sets of letters.  The third apparently is in the
3  possession of another person who has declined to allow
4  Mr. Truglia to obtain it.
5       Now, you know, I can't independently confirm any of
6  this obviously, so I'm not going to like -- but that's -- so
7  the second alternative would be to compel this person to at
8  least, you know, come to court and say what he has or doesn't
9  have.  So that's I think what we would like to try to do if the
10 Court, you know, wants to -- we don't have to obviously wait
11 until September 8th to do any of those things.
12      THE COURT:  Well, what's in New York?
13      MR. GOMBINER:  So my understanding, what's in New
14 York, is that there is an individual here who has both -- who
15 has both a hard drive on which this code -- this key resides,
16 and also he also has -- he just has a hard drive.  He has a
17 hard drive on which this code is in its entirety -- the
18 remaining piece is on a hard drive.  It's not on a piece of
19 paper.  It's on a hard drive that he has.
20      He also apparently has some jewelry that belongs to
21 Mr. Truglia.  Now, you know, I haven't -- I didn't really --
22      THE COURT:  So if he went to New York --
23      MR. GOMBINER:  Right.
24      THE COURT:  -- where the hard drive is located --
25      MR. GOMBINER:  Right.

1           THE COURT:  -- what happened?

2           MR. GOMBINER:  So Mr. Truglia both spoke to this

3   person -- I mean, I can give the Court his name if the Court

4   wants, but spoke to this person over the phone, and went to his

5   place of employment, and he declined to provide it.

6           So, you know, one possibility, we could have a

7   hearing, and subpoena this individual, and see what he has to

8   say about that.  I mean, maybe a subpoena would get his --

9   maybe that would change his mind about what he wanted to do.

10  But that's my understanding of what the current situation is.

11          THE COURT:  Comments, Mr. Capozzi?

12          MR. CAPOZZI:  Your Honor, Mr. Truglia has made a

13  series of excuses for why he has been unable to pay restitution

14  after promising to do so to this Court in a signed restitution

15  order.  The cryptocurrency access is one thing.  Separate and

16  apart from that, he, in the PSR, declared assets of well over a

17  million dollars in other forms.  He has made zero payments of

18  restitution, despite having assets separate and apart from this

19  purported wallet.  He has sold a luxury watch for $92,000 in

20  February.  He has a bank account --

21          THE COURT:  What did he do with that money?

22          MR. CAPOZZI:  Your Honor, I do not believe I know the

23  tracing on where those funds ultimately went.

24          THE COURT:  Mr. Gombiner, what did he do with the

25  money?

1            MR. GOMBINER:  Well, Judge, may I consult with my
2    client and see if it --
3            THE COURT:  Yes.
4            MR. GOMBINER:  Judge, could I just go in the back for
5    a second, so we don't have to whisper?
6            THE COURT:  Marshals, take him in the back room.
7            MR. GOMBINER:  Thank you.  Thank you, Judge.
8            I'm not a very good whisperer, and I don't want to --
9            THE COURT:  Well, it's very hard.  The situation is
10   very hard.
11           MR. GOMBINER:  Thank you, Judge.
12           (Pause in proceedings)
13           THE COURT:  Yes, Mr. Gombiner.
14           MR. GOMBINER:  All right.  Your Honor, my
15   understanding is that Mr. Truglia spent the proceeds of the
16   sale of the watch.  That largely went to legal fees for his
17   lawyer in California, and it went to repay some student loans.
18   So the money is not currently available.
19           My further understanding is that Mr. Truglia I think
20   was remanded prior to his sentencing, because of some
21   violations of his conditions of pretrial release, and the
22   morning that he was being remanded, he gave to this person --
23   he gave this person -- I think his name is Bennett Genovese --
24           THE COURT:  Is what?
25           MR. GOMBINER:  I think his name is Bennett Genovese,

1   G-e-n-o-v-e-s-e.  He gave him several hundred thousand dollars
2   worth of jewelry, and he gave him a hard drive that has on it
3   the third piece to this key to the digital wallet.  And that --
4   Mr. Genovese was supposed to send the hard drive to
5   Mr. Truglia's father.  He didn't do that.  And now he has
6   declined to turn over either the jewelry or the hard drive.
7            THE COURT:  These are all --
8            MR. GOMBINER:  You know, I'm not saying --
9            THE COURT:  I know you're the messenger here.
10           MR. GOMBINER:  I'm --
11           THE COURT:  You're just telling us what Mr. Truglia
12  told you.
13           MR. GOMBINER:  Well --
14           THE COURT:  Mr. Capozzi, how do you want to proceed?
15  Do you know?
16           MR. CAPOZZI:  Well --
17           MR. GOMBINER:  Well, Judge, my suggestion is I would
18  ask for a hearing, and then we can subpoena --
19           THE COURT:  That's what I think we should do, have a
20  hearing.
21           MR. GOMBINER:  And at a hearing, we will subpoena
22  Mr. Genovese as a witness.
23           THE COURT:  What do you want to do?
24           MR. CAPOZZI:  Setting a hearing is fine, your Honor.
25           THE COURT:  Having a hearing.

1          MR. CAPOZZI:  Having a hearing.  And I would, I mean
2     --
3          THE COURT:  What's going to happen at the hearing?
4     Who are going to be the witnesses?
5          MR. CAPOZZI:  Well, your Honor, I think the government
6     could produce to testify perhaps the probation officer, who
7     made the repeated efforts to communicate the need for payment
8     of restitution.  The government could introduce documentary
9     records relating to, for example, the watch sale.  There was
10    also a Wells Fargo account that the defendant had, which he did
11    not disclose on a financial disclosure form, which received
12    over $130,000 over -- in the February -- January, February of
13    this year, none of which --
14         THE COURT:  That would be enough, Mr. Gombiner, to
15    allow me to find by a preponderance that your client is guilty.
16    Then I can sentence him on the V.O.S.R., according to
17    probation, to about 19 months under the guidelines if I do it
18    consecutively, and up to six years if I do it according to
19    statutory powers.
20         Now, Mr. Truglia, the question really for you, because
21    you're subject to sitting in jail another six years -- I don't
22    know, maybe you like it there, but I can't see any reason that
23    you can't get the keys.  If you can't do it, you can get your
24    father to do it.  If you can't do it, you can empower the
25    government to do it by giving them the information, and giving

1  them the names that are involved.

2          MR. GOMBINER:  Well --

3          THE COURT:  You were about to tell me, Mr. Gombiner,

4  the name of one person who denied Mr. Truglia the hard drive on

5  which the keys are.

6          MR. GOMBINER:  Yes.  His --

7          THE COURT:  Presumably Mr. Truglia can access that

8  hard drive.  He can access the hard drive in New York.  Why

9  can't he access it where he sits?

10         MR. GOMBINER:  Because he doesn't have it.  That's the

11 problem.

12         THE COURT:  He doesn't have the key?

13         MR. GOMBINER:  He doesn't have the hard drive itself.

14 That's in Mr. --

15         THE COURT:  Well, you don't have that possession of a

16 hard drive.  We just have to have the possession of a command

17 to unlock the hard drive.

18         MR. GOMBINER:  No.  I think he would actually need

19 physical access to the hard drive.

20         THE COURT:  Why?

21         MR. GOMBINER:  Because it's not connected to the

22 internet or anything.  It's just an object sitting there with

23 information on it.  I mean, he would -- Mr. --

24         THE COURT:  You know, I think Mr. Truglia has a

25 choice.  Having a really decent explanation why he can't get

1  the money, because he has the money apparently, or sitting in
2  jail.  So that's your choice, Mr. Truglia.
3           MR. GOMBINER:  Well, so, Judge, what I would suggest
4  is why don't we schedule a date for a hearing, maybe like in --
5  I have a trial that's supposed to start September 11, but the
6  second or third -- like the third week in September, and in the
7  interim, I can definitely discuss with the government whether
8  they want to assist us in trying to retrieve this hard drive.
9  And, you know, I understand this is at our peril to a certain
10 extent.  I mean, this is all not credible -- I don't think
11 that's going to be help --
12          THE COURT:  There's another question:  To what extent
13 does the government have to spend its resources on collecting
14 the restitution.  Mr. Turpin has the ability to do this as
15 well, and his added expense could be added on to the debt.
16          MR. GOMBINER:  Well, I think --
17          THE COURT:  Mr. Capozzi.
18          MR. CAPOZZI:  Your Honor, I believe the victim and his
19 counsel have expended significant resources since the date of
20 sentencing trying to get Mr. Truglia to deliver on his
21 restitution obligation, and counsel for Mr. Turpin has said
22 that he's happy to participate in a hearing before your Honor
23 to explain those efforts.  And so I think --
24          THE COURT:  I'll tell you something else.  What you
25 need is to find out the names from Mr. Truglia of people who

1    have access to the numbers, to the key, and take the deposition
2    so those people are under oath --
3             MR. GOMBINER:  I mean, that's fine, Judge.  I would
4    love that to happen.
5             THE COURT:  Bring them to a hearing.  Are all those
6    people in the U.S.?
7             MR. CAPOZZI:  Yes, they are, Judge.
8             MR. GOMBINER:  He lives in Brooklyn.
9             THE COURT:  Do you have the names to give to
10   Mr. Capozzi?
11            MR. GOMBINER:  Yes.  I think I have a phone number,
12   too.  I don't know.  I don't have it with me, but I do have
13   one.
14            MR. CAPOZZI:  Your Honor, if the Court set a hearing
15   date, I would think that -- this seems to meet the defense's
16   case, and the defense would have an opportunity to subpoena
17   witnesses.  Again, this is not to say we wouldn't also consider
18   doing it, but if there were a hearing on the V.O.S.R., I would
19   think they would be capable of subpoenaing witnesses who they
20   believe would testify favorably to them in terms of an
21   explanation for why he hasn't been able to pay.
22            THE COURT:  I recognize what you're saying, but I
23   think in the interest of getting the money, you should do it.
24            MR. CAPOZZI:  I take your point, your Honor.
25            THE COURT:  You're absolutely right in terms of a

1   technical defense, but our interest is less technical defense
2   than getting the money and getting the victim repaid.  It's an
3   outright theft of money from the victim, and he is entitled to
4   restitution.  If we could have a hearing, you get the people
5   here --
6           MR. CAPOZZI:  And I agree if we have a hearing date,
7   then the government could subpoena them as well.
8           THE COURT:  September 18.
9           MR. GOMBINER:  Thank you, Judge.
10          THE COURT:  10:00.
11          MR. CAPOZZI:  Your Honor, just two points before we
12  adjourn, if your Honor is inclined to adjourn.  One, as a
13  formal matter, the violation report was amended following our
14  last appearance, and so --
15          THE COURT:  There are -- I'll arraign him on those.
16          MR. CAPOZZI:  You'll arraign him on specification
17  five.
18          THE COURT:  Yes.  I don't know if I did five, so start
19  with five.  I know we did one through four.
20          MR. CAPOZZI:  And I believe the others are still
21  there.  It's just five is the only one that is changed, so I
22  believe you would only need to arraign him on the amended no.
23  5.
24          THE COURT:  I can do it all over again.  There's no
25  harm in it.  I'll do 5 through 7.  And the second is they give

1    you notice that a judgment was -- suffered a clerical error.
2    We neglected to put down the second tranche of the restitution
3    ordered by the order of restitution and ordered in the
4    sentencing transcript.  So we will amend the judgment as well.
5              MR. CAPOZZI:  And just the second point, just as a --
6    and I haven't run it to ground.  My understanding of the
7    sentencing possibility on the violation would be that
8    consecutive sentences would not necessarily be available and,
9    thus, the statutory maximum ordinarily, regardless of the
10   number of specifications, would be two years on this given his
11   underlying conviction.
12             THE COURT:  Why is that?
13             I can see where a number of these specifications,
14   they're redundant, but specification five is different from
15   anything else.  So I can -- I believe -- and 6 and 7 are
16   different from anything else.
17             MR. CAPOZZI:  And I will check this.
18             THE COURT:  No. 3 will depend on the outcome of the
19   proceedings in the Florida Criminal Court.  These are all
20   different.  I don't know why I can't sentence cumulative.
21             MR. CAPOZZI:  And between now and when we have the
22   hearing, I will do further research to solidify my
23   understanding.
24             THE COURT:  I would appreciate it very much, because
25   these are different specifications.  They don't overlap, in

1    many respects, most respects.  No. 1 is a felon in possession

2    of ammunition.  No. 2 is a state crime, which we would defer

3    for the resolution of the state crime.  No. 3 is also a state

4    crime.  No. 4 is a travel violation, which he's admitted to.

5    No. 5 is a failure to pay restitution.  Nos. 6 and 7 have to do

6    with the failure to seek employment.

7            MR. CAPOZZI:  And, your Honor, just to be clear on the

8    scope of September 18, my proposal for the Court's

9    consideration would be to focus on what I think has been the

10   focus of everyone in the courtroom, which is the restitution

11   obligation, making the victim whole, as opposed to at this time

12   attempting to prove up, which I believe the government could,

13   but prove up the state crime specifications, for example.

14           THE COURT:  I don't think you can do the state crime

15   until the state decides itself, so those can remain.  We can

16   defer those, and deal with the rest.

17           MR. CAPOZZI:  Okay, your Honor.

18           MR. GOMBINER:  Thank you, Judge.

19           THE COURT: All right.  Mr. Truglia, please stand.

20   Take off your mask.

21           I believe I arraigned you on specification five, but

22   we'll do it again.  On or about February 6, 2023, it reads you

23   failed to make a good faith effort to pay the Court ordered

24   restitution, and that you failed to make a payment in the

25   amount of $12,100,000 within 30 days, that is, by December 31,

1    2022, and you failed to make a payment of $8,279,007 by January
2    31, 2023, which amounts would have totaled the amount of
3    restitution, $20,379,007.
4             How do you plead?
5             THE DEFENDANT:  Not guilty, your Honor.
6             THE COURT:  Specification six, March 24, 2023, you
7    failed to truthfully answer an inquiry from the probation
8    officer, to-wit, you reported actively seeking employment when
9    your search for employment did not begin until March 29, 2023.
10   That was following -- I'll stop there.
11            How do you plead?
12            THE DEFENDANT:  Not guilty.
13            THE COURT:  Seven, on or about March 13 and March 20,
14   2023, you failed to follow the instructions of the probation
15   officer in that on March 6, 2023, you were instructed to
16   provide weekly job search logs, and you failed to do so.
17            How do you plead?
18            THE DEFENDANT:  Not guilty.
19            THE COURT:  A not guilty plea will be entered in
20   response to specifications 5, 6, and 7.
21            To review, Mr. Truglia pleaded not guilty to
22   specifications 1, 2, and 3, and guilty to specification 4; is
23   that right, Mr. Gombiner?
24            MR. GOMBINER:  Yes, Judge.
25            THE COURT:  All right.  We will adjourn this matter

1   until September 18 at 10:00, when an evidentiary hearing will
2   be held.
3            MR. CAPOZZI:  Your Honor, one last point I want to --
4            THE COURT:  If we're not finished on the 18th, we'll
5   continue on the 19th.
6            MR. CAPOZZI:  Your Honor, one other point, just to
7   flag in terms of if we get to a point where we're having
8   sentencing on the violation.  The Bureau of Prisons calculated
9   that the defendant had over served time.  That is, he, on his
10  original sentence, spent more time in custody than was
11  authorized, because he got credit for time spent in California
12  state custody.
13           I raise this simply to say --
14           THE COURT:  Who gave him credit for California state
15  custody?
16           MR. CAPOZZI:  The Bureau of Prisons gave him credit
17  for time spent in California state custody per their
18  understanding of the statutory obligations.  And my reading of
19  the statute is the Bureau of Prisons was correct in that based
20  on the peculiar procedural background here, where he was
21  serving time in California, and that case related to a crime
22  that he committed after the federal crime, and it hasn't yet
23  been resolved.  Long story short, when -- if and when the Court
24  sentences the defendant again, he will have a stored bank of
25  credit that exists, which is roughly equal to a year.  And

1  so --
2          THE COURT:  You'll remind me of it.
3          MR. CAPOZZI:  I will, Your Honor, but I just wanted to
4  flag it now, so there's no misperception that there is, in
5  fact, you know --
6          THE COURT:  I will sentence him to what's appropriate,
7  and if he has a credit, he gets a credit against it.  It's not
8  a very difficult issue.
9          MR. CAPOZZI:  Thank you, Judge.
10         THE COURT:  September 18, 10:00, for a hearing on the
11 matter.  If the matter is resolved before then, you'll let me
12 know, and we'll probably dismiss the specifications.
13         MR. CAPOZZI:  Thank you, Judge.
14         (Adjourned)