h7j2benS kjc

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,              New York, N.Y.

            v.                         03 Cr. 308(LAK)

ARNOLD BENGIS,

            Defendant.

------------------------------x

                                       July 19, 2017
                                       11:45 a.m.

Before:

                  HON. LEWIS A. KAPLAN,

                                       District Judge


                      APPEARANCES

JOON H. KIM
     Acting United States Attorney for
     the Southern District of New York
BY:  KIERSTEN A. FLETCHER
     Assistant United States Attorney


CREIZMAN, PLLC
     Attorneys for Defendant
BY:  ERIC M. CREIZMAN
     MELISSA MADRIGAL


ALSO PRESENT:
JAMES CASSIN, Agent, NOOA

ANDREW BAUER, Arnold & Porter Kay Scholer

SAMUEL M. WITTEN, Arnold & Porter Kay Scholer

MR. BARNABAS XULU, ESQ., Representative of South Africa

Ms. Nomazothsho Memani, Representative of South Africa
```

h7j2benS kjc

1              (Case called)

2              THE DEPUTY CLERK:  Government, are you ready?

3              MS. FLETCHER:  Yes.  Good morning, your Honor.

4    Kiersten Fletcher for the government.  I am joined at counsel's

5    table by James Cassin of NOAA.

6              THE COURT:  Good morning.

7              THE DEPUTY CLERK:  Defendant?

8              MR. CREIZMAN:  Good morning, your Honor.  Eric

9    Creizman and Melissa Madrigal of Creizman PLLC.

10             THE COURT:  Good morning.

11             The first order of business is that there is a pending

12   motion by counsel for Mr. Bengis to vacate the order for

13   resentencing, and that motion is denied.

14             Now, some of what I am about to go through I believe

15   we covered last time, but I am just going to make sure for the

16   sake of good order.

17             Mr. Creizman, you and your client have had the

18   supplemented presentence report for the necessary period and

19   both have read it, correct?

20             MR. CREIZMAN:  Yes, your Honor.

21             THE COURT:  And Mr. Bengis continues to waive any

22   right he has to be present for the sentencing and has

23   deliberately absented himself, correct?

24             MR. CREIZMAN:  Yes.

25             THE COURT:  The presentence report will be sealed and

h7j2benS kjc

1    made available to counsel in the event of an appeal.

2              I take it there are no unresolved objections to the

3    supplemented presentence report, is that correct?

4              MR. CREIZMAN:  There are not.

5              THE COURT:  And I believe I did this the last time,

6    but to the extent it is relevant, I adopt the presentence

7    report and the guideline computation and range that it

8    contains.

9              I have received a small mountain of material that is

10   relevant here:

11             I have the supplemented presentence report.

12             I consider at least in part relevant and so mention it

13   the motion by Mr. Creizman filed May 10 for an order reversing

14   the court's finding that Mr. Bengis has willfully failed to pay

15   his restitution obligations and therefore to vacate the order

16   for resentencing.

17             I have a letter from Mr. Creizman belatedly filed late

18   yesterday.

19             I have at least two, I believe, letters from

20   Arnold & Porter as counsel to the Republic of South Africa, as

21   well as, if memory serves, two affidavits from government

22   officials of South Africa, as victim impact statements.

23             I believe I have a letter from the government.  Is

24   that right, Ms. Fletcher.

25             MS. FLETCHER:  Yes, you should, your Honor, dated July

h7j2benS kjc

1    14.

2              THE COURT:  Thank you.

3              And the government kindly, at my direction, submitted

4    a form of a preliminary order of forfeiture/money judgment.

5              Is there anything I have omitted to mention?

6              MS. FLETCHER:  Your Honor, with respect to the

7    government's submission, I would just note that the submission

8    also included a declaration from NOAA Agent Jeffrey Ray, which

9    attached certain invoices.

10             THE COURT:  Yes, thank you.

11             Mr. Creizman?

12             MR. CREIZMAN:  No.  That's it.  Thank you.

13             THE COURT:  In the letter that was filed last night,

14   Mr. Creizman, to my memory, for the first time in these

15   proceedings, objected to the participation by Arnold & Porter

16   in these proceedings, as distinct from the submissions made by

17   officials of the Republic of South Africa.

18             Do I have that correctly, Mr. Creizman?

19             MR. CREIZMAN:  I have no particular objection to

20   Arnold & Porter participating.  I have an objection to South

21   Africa's participation in the proceedings beyond --

22             THE COURT:  They are an alleged victim, and they have

23   the right, as victims, do they not, to be heard on the question

24   of sentencing?

25             MR. CREIZMAN:  They have a right to be -- I think in

h7j2benS  kjc

1    the court's discretion, they have a right to be heard; but,

2    under the Crime Victims -- the CVRA -- I think the "R" stands

3    for "restitution" -- a foreign government is not a victim,

4    although it is entitled to restitution.  I think the court has

5    discretion to let South Africa make a victim impact statement.

6    I don't agree that it gives the right to South Africa to file

7    papers moving for forfeiture orders or making legal arguments.

8    I think that --

9            THE COURT:  So I think what you just said is

10   essentially what I said a minute ago, which you started off

11   disagreeing with, I thought.  You don't have any objection

12   to -- I no longer remember the lady's name, but the very

13   eloquent South African official from DAFF, or Mr. Xulu, who was

14   heard in the previous proceeding, and to the affidavits or

15   declarations they submitted, is that right?

16           MR. CREIZMAN:  I have no problem with those.

17           THE COURT:  I don't remember if there were

18   declarations or affidavits by other South African officials

19   submitted; but, if there were, you have no objection to that,

20   correct?

21           MR. CREIZMAN:  No objection.

22           THE COURT:  So what you are objecting to is only

23   things that Arnold & Porter has done or, in your view, may do

24   today.

25           MR. CREIZMAN:  Correct.  I thought your Honor was

h7j2benS kjc

1  mentioning Arnold & Porter particularly as a law firm as

2  opposed to --

3        THE COURT:  You are objecting to whatever a law firm

4  for South Africa has done in the past or may do in the future.

5        MR. CREIZMAN:  Absolutely.

6        THE COURT:  All right.

7        Is it correct that up until the filing of your letter

8  last night, you did not voice any such objection?

9        MR. CREIZMAN:  I did not voice any such objection.

10  But, to be fair, Arnold & Porter surfaced on July 6, and put in

11  a 14, 15 single-space page brief.  In terms of responding to it

12  and reviewing the various issues that they have raised, I have

13  come to the conclusion -- I found I could say I object, but I

14  would like to have some legal support for it, and I think I do,

15  and I think I have laid that out in the letter last night.

16        THE COURT:  Ergo, the short answer to my question, did

17  you prior to last night's letter raise any objection to

18  anything Arnold & Porter had done?  The answer is, no, you

19  didn't, right, until last night?

20        MR. CREIZMAN:  I have not raised an objection to their

21  being involved.  I raised an objection to the substance of

22  their statements, yes.

23        THE COURT:  You answered them on the merits.

24        MR. CREIZMAN:  Yes.

25        THE COURT:  You didn't object to them making the

h7j2benS  kjc

1    arguments.

2              MR. CREIZMAN:  That's right.

3              THE COURT:  All right.  Whatever has happened

4    *vis-à-vis* Arnold & Porter up to this moment is water over the

5    dam.  Whatever it was, it was without objection from

6    Mr. Bengis, right, wrong, or indifferent.

7              Going forward, without in any way agreeing with

8    Mr. Creizman's position on this, in the interest of avoiding

9    what is already a 14-year litigation getting any longer

10   unnecessarily, I will not take into account the matters

11   advanced by Arnold & Porter, as distinct from its client, to

12   which Mr. Creizman belatedly objected last night, in

13   resentencing, except that I intend to defer, as I am permitted

14   to do, the question of whether and to what extent the

15   restitution obligation should be changed to a later date, and I

16   am making no determination at this time as to whether or not I

17   will consider whatever Arnold & Porter has had to say up until

18   this point on that set of issues.  I don't have to do it today.

19   I am not reaching it one way or the other today.  And if I

20   conclude that a change should be made in the restitution

21   obligation down the road, I will make clear whether I have

22   considered Arnold & Porter's submissions to which objection has

23   been taken.  And if I should happen to fail to remember that,

24   Mr. Creizman, I am charging you with the personal obligation to

25   remind me.

h7j2benS kjc

1          MR. CREIZMAN:  I will, your Honor.

2          And may I just note that I have objected in my letter

3    last night and I have asked the court to strike those documents

4    and to not consider them, just to be -- to make sure that

5    that's clear.  I understand that your Honor considers my

6    objection belated, but I objected to it and whether -- I

7    don't -- I mean, it is later than I think I would have liked to

8    have objected to it, but it is objected to.

9          THE COURT:  I already told you I am not considering it

10   for any purposes today.  You want me also to strike them?  I

11   have stricken them --

12         MR. CREIZMAN:  Thank you, your Honor.

13         THE COURT:  -- in a physical, not a legal, sense.  I

14   don't know what else I can do but not consider them.  I could

15   take a buggy whip to them.

16         MR. CREIZMAN:  Thank you.

17         THE COURT:  Then, Mr. Creizman, I will now hear you on

18   the resentencing.

19         MR. CREIZMAN:  So I take it that your Honor is not

20   considering today the issue on the forfeiture.

21         THE COURT:  No.  That's not what I said at all.  I am

22   going to rule on the forfeiture today.

23         MR. CREIZMAN:  Okay.

24         THE COURT:  I said I was deferring restitution.

25         MR. CREIZMAN:  So I am going to object to the

h7j2benS kjc

1    forfeiture for the reasons stated in my letter.  Of course I

2    have submitted that late last night and understandably, so I

3    don't know, and I'm sure your Honor has plenty to do before

4    this appearance, so I don't want to repeat what I have said in

5    the letter --

6         THE COURT:  I read your letter, but this is your

7    opportunity to advocate orally.

8         MR. CREIZMAN:  Okay, and I am going to do that.

9         So I think that 3614, there is nothing in the

10   statute -- the statute says that the court may resentence and

11   impose the sentence it could have originally imposed.  In the

12   situation of restitution, in the situation of forfeiture, any

13   court that has applied, that is, increased a fine or increased

14   restitution has done so where an initial finding has been made

15   as to what the maximum is, and that particular defendant was

16   sentenced below the maximum.

17        So, for example, in the *Johnston* case, where there was

18   a 250,000 -- where he was sentenced -- where he was provided --

19   where he was ordered to pay restitution in a lesser amount than

20   his codefendants because he cooperated, similar to the

21   situation as Grant Berman and Shaun Levy in this case, when the

22   court found that he willfully failed to pay restitution, it

23   resentenced him to additional prison time and it also increased

24   his restitution amount to the amount of his codefendants,

25   jointly and severally.

h7j2benS kjc

1          So in that situation, similarly, there is no basis --

2     the court has found, the government, which is the litigant

3     here, and Mr. Bengis stipulated to a $5.9 million forfeiture

4     amount, which represented the gross proceeds.  Rule 32.2 of the

5     Federal Rules of Criminal Procedure requires the court to make

6     a finding.  The court made that finding.  And that represents

7     the amount of forfeiture.  It is not an opportunity to revisit

8     that particular decision because there are no new facts that

9     are presented, and it goes against the idea of *res judicata*,

10    finality of judgments; and, for that very reason alone, 3614

11    does not provide the court the authority to impose a higher

12    restitution order than was originally imposed.

13          Second, I think that I am troubled by the fact that

14    what the United States is attempting to do here is to obtain

15    what they cannot otherwise obtain through normal process.  They

16    are concerned that a court in the Royal Court of Jersey will

17    rule against their interests, and so what they are doing is

18    asking this court to impose an order of forfeiture so that

19    those funds are frozen and perhaps brought to the United

20    States, where your Honor could hear the same issues that are

21    being heard over in the Royal Court of Jersey.  I oppose that.

22    I don't think that there is a basis for that.

23          The point that I think is clear here is that South

24    Africa has not been involved.  They have not been apprised of

25    any of these proceedings.  They didn't know about the 1.8

1    million.  It's not an accident that they are involved now.

2    They are involved now because it is an opportunity for the

3    United States to argue what it can't argue because of the plea

4    agreement.  It is an opportunity to have South Africa make the

5    argument that please order a forfeiture order so that we can

6    get restitution, and I don't believe that that is fair and I

7    don't believe that that is -- and I think that this is a way to

8    circumvent.

9          THE COURT:  The fairness argument cuts in various ways

10    in this case.

11          Mr. Bengis, years ago, admitted to a personal net

12    worth of $25 million, and now he says that $24.3 million of

13    that is gone, and it is gone because he, in circumstances where

14    the United States was pursuing a restitution judgment against

15    him, which he knew could be in the tens of millions of dollars,

16    arranged his affairs in Jersey in such a way as to make the

17    money disappear into trusts that, as I understand it -- correct

18    me if I am wrong -- are under the control of the long-time

19    family lawyer who it is reasonable to infer does exactly what

20    Mr. Bengis and the family tells him to do, in order to

21    circumvent U.S. law and the ability of a U.S. court to enforce

22    restitution rights against the fortune that he amassed at least

23    in part by criminal behavior to which he has pleaded guilty in

24    a U.S. court.

25          MR. CREIZMAN:  I don't think that's fully accurate,

h7j2benS kjc

1    your Honor.

2          THE COURT:  If it's not, I am happy to hear the

3    correction.

4          MR. CREIZMAN:  This is my understanding:

5          There are trustees.  The trustees are professional

6    corporations that control the money and that make decisions in

7    the best interests of the beneficiaries.  There was a decision

8    at a certain point that -- and as we pointed out in our May 10

9    letter, in our May 10 submission -- that it wasn't Arnold

10   Bengis as protector, all Arnold Bengis could do as protector is

11   to veto or approve distributions.  He couldn't ask the trustees

12   for distributions.  He wasn't a beneficiary of the trusts.  And

13   at the time --

14         THE COURT:  Unless, of course, the beneficiaries

15   agreed to whatever he wanted, right?

16         MR. CREIZMAN:  Well, I think theoretically.  So I

17   don't know that he was -- my understanding is that he wasn't at

18   that point -- at some point he was a beneficiary, but at some

19   point the trustees reconfigured the trusts.

20         THE COURT:  And wouldn't it be true, right here in the

21   State of New York, that if you had a trust and you had

22   J.P. Morgan as the trustee, and the proposed object of a

23   distribution was not a beneficiary under the trust agreement,

24   but all beneficiaries concerned with the trust consented to

25   J.P. Morgan making a distribution to a nonbeneficiary,

1    J.P. Morgan could quite freely go right ahead and do it?

2              MR. CREIZMAN:  I suppose that's correct, yes.

3              THE COURT:  And I suppose it is true in Jersey, too.

4              MR. CREIZMAN:  But what happened here is that, while

5    your Honor is correct that the change was made, Mr. Bengis was

6    no longer the protector, and he knew that the United States was

7    pursuing restitution.  At that point your Honor had already

8    declined restitution and the matter was on appeal.

9              THE COURT:  I declined it not on the ground that it

10   wasn't warranted, but on the ground that the whole thing was

11   too complicated and shouldn't be determined as part of a

12   criminal case, it should be determined in civil litigation; and

13   the Court of Appeals, in its wisdom, disagreed with me.  They

14   thought it was a very simple matter, easily and quickly

15   resolved, and here we are 13 years later.

16             MR. CREIZMAN:  Your Honor, I also, to just -- because

17   your Honor asked me to remind you about certain things, and I

18   wanted to remind your Honor that you also reasoned that South

19   Africa didn't own the fish and your Honor also reasoned that it

20   wasn't a victim of the Lacey Act offense, which I thought were

21   quite strong arguments.

22             THE COURT:  Well, I did at the time, and now we are

23   both much smarter, as we always are when the Court of Appeals

24   points out the error of our ways.

25             MR. CREIZMAN:  It seems -- I think -- I don't know if

h7j2benS  kjc

1    I agree with that.

2              But the point being --

3              THE COURT:  Look.  The simple fact is, just to draw an

4    analogy -- I don't mean to imply that the point controls at

5    all -- someone who is a defendant in litigation and transfers

6    assets under the New York Debtor and Creditor Law has committed

7    a fraudulent conveyance by virtue of the pendency of the

8    litigation alone.  Isn't that true?

9              MR. CREIZMAN:  That's true, but I don't know that

10   Arnold Bengis is the one who did that, and I also don't know

11   why Mr. David Bengis would have been made the beneficiary, who

12   also was being pursued for restitution at that time, and there

13   was certainly no indication that David Bengis -- he was under

14   the same joint -- the government was pursuing joint and several

15   liability against him, too.  So the government's story of

16   Mr. Bengis manipulating these trusts in a way to evade the

17   United States's pursuit is, I think, overblown and it is not

18   completely accurate.

19             THE COURT:  Only partly accurate.

20             MR. CREIZMAN:  It may be partly accurate.

21             THE COURT:  So it's partly accurate that he

22   manipulated the trust --

23             MR. CREIZMAN:  No.  I am saying that it is not fitting

24   in entirely with their story, right, because if it did -- it

25   would make sense, I would agree it would make sense if David

h7j2benS kjc

Bengis was not named as the beneficiary.  He was.  Why would he
have been named as beneficiary?

        THE COURT:  The beneficiary or --

        MR. CREIZMAN:  A beneficiary.

        THE COURT:  -- sole beneficiary.

        MR. CREIZMAN:  He was named as a beneficiary.  I would
have to look at what -- I think he was the sole beneficiary,
because I don't think there were any other beneficiaries.  And
Arnold Bengis was not.  So that, to me, says that whatever the
reasons were for the trustee to reorganize the trusts, it may
not have been to evade the United States' pursuit of
restitution.  It may have been, as has been argued in the Royal
Court of Jersey, to benefit the future generations of the
Bengis family, and that is the argument that was laid out in
the motion to vacate and that is the argument I am making to
your Honor.

        THE COURT:  Obviously it benefited them, you know.
What happened, in broad strokes, is that, rather than wait
until he died and transfer the property by will, with the
United States hot on his heels, he gave it away, perhaps, at
least in form, before the United States could get at it.

        MR. CREIZMAN:  If he directed the trustees to do that,
which I don't know that the United States has offered proof for
that, and I am saying that there are facts that are
inconsistent with the United States's argument.  So that is all

1    I am saying.

2             And I am also saying that the Royal Court of Jersey

3    is, because of your Honor's order, because of the deposit order

4    and your Honor's order saying that no one can help, not Arnold

5    Bengis, David Bengis, Jeffrey Noll, or anyone in concert with

6    them can remove the funds from that account for their benefit,

7    SG Hambros has refused to disburse those monies at the

8    direction of the trustees.  The principal matter being

9    litigated -- there were hearings on this, as I understand it --

10   is whether Arnold Bengis is a beneficiary, the beneficial

11   owner, controller, etc., of those funds and whether those funds

12   ever belonged to Mr. Bengis.  The court is going to make a

13   ruling on that.  And what the United States is trying to do,

14   and I think indirectly, so as not to blatantly violate the plea

15   agreement, is to get the authorities in South Africa to the

16   United States and then get involved in this litigation and ask

17   for an order of forfeiture.

18             THE COURT:  Do you have any -- any -- evidence to back

19   up the assertion --

20             MR. CREIZMAN:  I --

21             THE COURT:  Let me finish.

22             -- that it is the United States pushing South Africa

23   to get involved, as distinguished from South Africa pushing the

24   United States?

25             MR. CREIZMAN:  Yes.  Yes, I do.

 1          THE COURT:  What --

 2          MR. CREIZMAN:  I have --

 3          THE COURT:  Don't talk over me, Mr. Creizman.

 4          MR. CREIZMAN:  Oh, I wouldn't.

 5          THE COURT:  I'm glad you wouldn't.  I am reassured.

 6          Where is the evidence in your papers?

 7          MR. CREIZMAN:  It is circumstantial.  It is

 8  circumstantial evidence.  And similar to the evidence that the

 9  United States has offered that Arnold Bengis has reconfigured

10  the trusts to evade the United States' pursuit of restitution,

11  in this case, what we have is, South Africa, in South Africa's

12  papers -- first of all, the government went to Arnold & Porter.

13  I mentioned the --

14          THE COURT:  The government went to Arnold & Porter?

15          MR. CREIZMAN:  I didn't say the government went to

16  Arnold & Porter.

17          THE COURT:  Yes, that's exactly what you said.

18          MR. CREIZMAN:  I just said that, right, but I am

19  giving your Honor the basis for my --

20          THE COURT:  This is the alternate facts version.

21          MR. CREIZMAN:  This is my theory.  And just as the

22  government has extrapolated from and has inferred from various

23  facts that Arnold Bengis hid the money from the United States

24  and brought it outside of its jurisdiction, I believe that the

25  very fact in Arnold & Porter's papers that South Africa had no

1   idea that David Bengis a year ago provided or two years ago

2   gave $1.25 million in restitution, no idea.  That the South

3   Africans --

4              THE COURT:  And you know that how?

5              MR. CREIZMAN:  It is in Arnold & Porter's papers.

6              THE COURT:  They said they had no idea about it?

7              MR. CREIZMAN:  I will -- it is in their July 6 paper.

8   It is in a footnote.

9              THE COURT:  So this Arnold & Porter paper you want me

10  to consider, is that right?

11             MR. CREIZMAN:  I don't know.

12             THE COURT:  I'm just trying to find out, Mr. Creizman.

13             MR. CREIZMAN:  Your Honor, it is a belated filing last

14  night, so I am tired on that one.

15             THE COURT:  It was not only belated last night, it was

16  due Monday.

17             MR. CREIZMAN:  No.  Yes.  Yes, it was.

18             THE COURT:  Footnote 2 on page 2 of the July 6 letter,

19  if I am allowed to look at it, it says the amount currently

20  outstanding is $21.19 million, which reflects the $1.25 million

21  payment by David Bengis.

22             MR. CREIZMAN:  That's right.  But --

23             THE COURT:  It certainly nails the point that they

24  didn't know about it.

25             MR. CREIZMAN:  Later in the brief it nails the point,

h7j2benS kjc

 1    though.  The point is nailed later in the brief.  I may be --

 2              THE COURT:  -- wrong.

 3              MR. CREIZMAN:  No.

 4              THE COURT:  Mr. Creizman, let's go on.

 5              MR. CREIZMAN:  Footnote 18 on page 13, "South Africa

 6    has recently learned that the $1,250,000 that David Bengis paid

 7    to satisfy his restitution obligation is still being held by

 8    the Clerk of the Court," etc.

 9              I don't think.

10              THE COURT:  So that means they learned it.

11              MR. CREIZMAN:  They learned it because they -- but

12    they only recently learned it because there was a necessity to

13    involve South Africa in these proceedings so that the --

14              MS. FLETCHER:  Your Honor --

15              THE COURT:  Ms. Fletcher, cool your jets.

16              Look.  That's one of these arguments like, It's

17    raining outside, and therefore the defendant must be innocent.

18    There is just no connection between the statement and the

19    conclusion.  None.

20              They recently learned it?  Okay.  That proves that the

21    United States initiated this with them?  Give me a break.

22              MR. CREIZMAN:  Let's forget about what the motives

23    are.  The effect of what is happening here with South Africa

24    making this forfeiture argument and the government saying we

25    are not going to violate the plea agreement, but we don't see

h7j2benS kjc

1    any problem with it, that, to me, is a way to circumvent the

2    plea agreement.

3            THE COURT:  Look.  Well, a way to circumvent the plea

4    agreement.  If, by that, you mean that because South Africa has

5    taken an initiative here, there may be a result which the

6    United States, had it not had input from the victim, might not

7    have pursued, and maybe could not have pursued, it's now being

8    pursued.  All right, I guess.  If by that you mean that the

9    nefarious scheme hatched by the United States government to put

10   the South Africans up to doing something that would get the

11   United States around its plea agreement, I see not a shred of

12   evidence to support that, however much you might wish it

13   exists.

14           MR. CREIZMAN:  Well, assuming that it is not

15   nefarious, it is still inappropriate.  It's an inappropriate

16   argument, and I pointed out cases saying --

17           THE COURT:  Bottom line, your guy owes South Africa

18   $21.19 million.  He was a vastly rich man.  He transferred his

19   assets, and he is trying to get away with it.

20           MR. CREIZMAN:  But that --

21           THE COURT:  That's what's happening.

22           MR. CREIZMAN:  But that is your -- and that is what

23   your Honor is taking from what your Honor sees as the facts,

24   but not all of the facts are before the court and, as I already

25   pointed out, there are some facts that are inconsistent with

h7j2benS kjc

1    that, and there is a court that is hearing this.

2              THE COURT:  The guy had 25 million bucks.  He had the

3    ability to do the honorable thing, and that would have been,

4    years ago, to write the check for $21 million.

5              Instead of writing the check for $21 million, the

6    money winds up in Jersey.  The trusts get all rearranged.  He

7    is now paying you -- well, I hope, for your sake -- to try to

8    defend what happened and to pass the money to his heirs and to

9    leave the victim of what he did and what he pleaded guilty to

10   doing high and dry.  That's what's going on here, however you

11   slice it.

12             MR. CREIZMAN:  But there is a -- and I am not saying

13   that -- I have already come before the court and I have said

14   that Arnold Bengis clearly owes the South African government

15   money, he is in default, but I don't believe he is in willful

16   default.  I don't believe the evidence is there to show that he

17   is in willful default.

18             I also would say that, at the same time, there was,

19   and I think your Honor will recall, there was no -- at the

20   time, before he was sentenced, there was not even the slightest

21   indication that the restitution that would be sought would be

22   anywhere in the realm of $100 million or whatever the amount

23   was, especially after -- and I understand, and one of the

24   arguments we made to your Honor at sentencing for a downward

25   departure was the sort of double jeopardy argument, as you will

1    recall.  In that case, the weakness in our argument was that

2    Mr. Bengis had not personally been prosecuted in South Africa.

3    In this case, in this case, in terms of restitution, Hout Bay

4    was prosecuted.  Hout Bay negotiated with the National

5    Prosecuting Authority and they forfeited money.  And we heard

6    from the eloquent representative of DAFF just the other day who

7    said, well, the National Prosecuting Authority doesn't speak

8    for us.  We are a different organization.  We are a different

9    agency.

10           THE COURT:  Mr. Creizman, we are getting off the

11   point.

12           MR. CREIZMAN:  A little.

13           THE COURT:  You have been on your feet quite a long

14   time and I have a meeting at 1:00 and other cases to hear

15   today, so could you try to wrap it up?

16           MR. CREIZMAN:  Yes.  Yes, I can.

17           So I think I have made the arguments with respect to

18   the forfeiture issue in my papers, international comity, why

19   Federal Rule of Criminal Procedure 38 doesn't authorize the

20   court to do what the South African government wants it to do.

21           So I just wanted to say some things about Mr. Bengis,

22   which is that, notwithstanding the fact that he hasn't, as your

23   Honor said, done the honorable thing, you know -- and, again, I

24   think that we are assuming that he certainly can, but putting

25   that aside -- he has paid $7 million to South Africa.  He has

1    paid $7 million, $7.5 million in forfeiture to the United

2    States.  David Bengis has paid $1.5 million in forfeiture --

3    I'm sorry $1.25 million in forfeiture.  Arnold Bengis has

4    offered to relinquish the $1.8 million bond in restitution, I'm

5    sorry, and David paid 1.25 in restitution.

6           That amounts somewhere in the range of $18 million,

7    okay?  I don't know how much of the forfeiture that the United

8    States received went to South Africa.  I suspect not too much

9    because South Africa has said that they were empty-handed.  But

10   Mr. Bengis has paid $18 million.  He has lived with this case

11   since 2002, 2001, first in South Africa and then here.  And

12   this case, as your Honor has pointed out, has gone on 13 years.

13   And while it is painful for your Honor --

14           THE COURT:  14.

15           MR. CREIZMAN:  14.

16           And while it is painful for the court, one could

17   imagine how painful it is for the Bengis family and for Arnold

18   Bengis.  Arnold Bengis -- and your Honor said at sentencing

19   something along the lines of that, Good and bad are not too

20   sides of the same wall, or it was more eloquent and it was good

21   and I have quoted it in a sentencing brief before.  But the

22   point being that Arnold Bengis has done a lot of good.  For the

23   harm he has caused South Africa, the evidence that's being

24   brought here about him and the statements and the allegations I

25   think are way overblown.  It ignores all of the other causes of

1   problems in South Africa, all of the other causes to the rock

2   lobster population.

3           Mr. Bengis is a grandfather.  He is 81 years old.  He

4   wants to live the rest of his life out in peace, I think his

5   family would appreciate that.  I think that he served his

6   time --

7           THE COURT:  There is a reasonably clear way for him to

8   do that.

9           MR. CREIZMAN:  Yes, yes, there is.  But, your Honor,

10  at the same time, I think that as compared to other similarly

11  situated individuals, people who have been convicted of crimes,

12  who have hurt human beings, who have stolen people's property,

13  who have left people penniless, they have paid much less than

14  Mr. Bengis has; they have served, I wouldn't necessarily say

15  less time, but they certainly have not been pursued the way

16  Mr. Bengis has.  I am asking the court to be as lenient as

17  possible, certainly not to impose this forfeiture order, and I

18  am asking the court to be lenient as possible with Mr. Bengis,

19  who -- certainly I think there is no -- the need for a general

20  deterrence has been met in this case, and I believe that he is

21  no danger to society at this point.  He hasn't been in the

22  fishing business for years, and the problems that South Africa

23  is facing in that business with abalone and other things, those

24  are the causes of other poachers.  I think Mr. Bengis --

25          THE COURT:  Okay, Mr. Creizman.

h7j2benS kjc

1      MR. CREIZMAN:  Okay, well, then, that's all I have to

2  say.  Thank you, your Honor.

3      THE COURT:  Thank you.

4      Ms. Fletcher.

5      MS. FLETCHER:  Thank you, your Honor.  I will be very

6  brief.

7      Just by way of short background on the government's

8  resentencing motion, as your Honor is aware, that motion was

9  filed in December.  Your Honor granted the government's motion

10  for resentencing in March.  The government, prior to March, had

11  no contact with anyone representing the government of South

12  Africa in connection with these proceedings.  The motion for

13  resentencing was motivated entirely by the government's view,

14  which I think your Honor shares, that the defendant was ordered

15  to pay $21 million in restitution, he had the money at the time

16  that the restitution issues were in the early stages of

17  litigation, and then, through a series of steps that I

18  understand your Honor is very familiar with and so I won't

19  belabor, moved those funds into an account where the U.S.

20  government couldn't touch them.  And it was the government's

21  goal in filing the motion to ask this court to exercise its

22  discretion and to take whatever steps in connection with

23  resentencing it viewed as appropriate and it viewed as likely

24  to ensure compliance with the restitution order.  That's it.

25      Only after your Honor granted the resentencing motion

1   did the government learn of the South African government's

2   interest in these proceedings, and, contrary, frankly, to very

3   baseless assertions by Mr. Creizman, that was not at the

4   government's initiation.

5        The government was surprised to receive a phone call

6   from a lawyer representing South Africa, and provided

7   information to that lawyer about the proceedings -- and this is

8   Mr. Bauer -- about the proceedings, about the current state of

9   play for the restitution payments that had already been made,

10  and about the schedule for the resentencing.

11       There is no ulterior motive here, your Honor.  The

12  government did not in any way suggest that Mr. Bauer or that

13  South Africa should pursue a forfeiture order.  It merely

14  presented to counsel for South Africa what the issue was, which

15  frankly was that, notwithstanding significant efforts by the

16  government, both domestically and in Jersey, there did not

17  appear to be any mechanism to enforce the restitution order.

18       So with respect to the civil litigation going on in

19  Jersey, your Honor, yes, that civil litigation does relate to

20  who the beneficial owners are of those accounts; but even if,

21  for example, the court rules that Arnold Bengis is the

22  beneficial owner of the accounts, there is no mechanism for the

23  government to secure those accounts to pay the restitution

24  obligation.  So in light of that, the government didn't seek to

25  intervene in those proceedings.  It would not have accomplished

1     our goal, which is trying to get the restitution payment paid.

2     That's it.

3          I am happy to address any of the issues in

4     Mr. Creizman's papers that your Honor would like me to.

5          I think, as your Honor is aware, I have made very

6     clear the government's insistence on standing by the terms of

7     its plea agreement.  I even refused to answer some of your

8     Honor's questions during the last proceeding for fear that they

9     might be construed as advocating for forfeiture.  The

10    government does not advocate for forfeiture and simply notes

11    for your Honor that the research I have done at your Honor's

12    direction, my review of the case law cited by Mr. Creizman, I

13    see no reason why your Honor in these proceedings is

14    constrained in terms of the relief it can impose under 3613(a)

15    and 3614.

16         So unless your Honor has any questions, I am happy to

17    sit down.

18         THE COURT:  Okay.  Thank you.

19         I have a question for both of you.  I wonder, assuming

20    for the sake of discussion, that I impose a new forfeiture

21    amount, whether paragraph 1 of the form of order that the

22    government submitted at my direction is worded appropriately in

23    this respect.  Would it not be more accurate if it read as

24    follows:

25         "As a result of the offenses charged in Count One of

h7j2benS kjc

1    the indictment to which the defendant pled guilty" -- that much

2    is the same -- insert, "the defendant shall forfeit to the

3    United States the amount of X in U.S. currency and a money

4    judgment shall be entered."

5              MS. FLETCHER:  Yes, your Honor.  I think that would

6    make it more clear.

7              THE COURT:  Any problem, Mr. Creizman?

8              MR. CREIZMAN:  Your Honor, quite frankly I haven't

9    seen the government's proposed order.  I don't know how that

10   happened.

11             MS. FLETCHER:  I am happy to hand Mr. Creizman a copy.

12   It was attached to an e-mail I sent yesterday.

13             MR. CREIZMAN:  Okay.  Sorry about that.

14             (Pause)

15             MR. CREIZMAN:  I agree your Honor's suggestion makes

16   it clearer.

17             THE COURT:  Thank you.

18             A couple of odds and ends before I pronounce sentence:

19             Reference has been made by Mr. Creizman to a supposed

20   requirement for a finding of willful failure to pay restitution

21   derived from 18 United States Code 3614.  At one point he

22   indicated that I previously made a finding of willfulness.  At

23   another point I think he indicated that I have not and that

24   such a finding would be not warranted.

25             I look at the statute.  Section 3614(a) says that

1   subject to subsection (b), the court may resentence to any

2   sentence which might originally have been imposed on a finding

3   of knowing failure to pay restitution.  I have certainly made a

4   finding of knowing failure.

5           (b) reads, in relevant part:  The defendant may be

6   sentenced to a term of imprisonment under Subsection (a) only

7   if the court determines that the defendant willfully refused to

8   pay the delinquent fine or had failed to make sufficient *bona*

9   *fide* efforts to pay the fine; or, in light of the nature of the

10  offense and the characteristics of the person, alternatives to

11  imprisonment are not adequate to serve the purposes of

12  punishment and deterrence.

13          Thus, the plain language of the statute seems to me on

14  its face to require a finding of willfulness only as a

15  predicate to a term of imprisonment based on failure to pay a

16  fine or to make *bona fide* efforts to do so.  There is no

17  mention in clause (b) of restitution at all.  Thus the plain

18  language of the statute seems to indicate that imprisonment may

19  be imposed for knowing failure to pay restitution, and that a

20  finding of willfulness is not necessary for that purpose.

21          Nonetheless, against the possibility that a higher

22  court might take a different view of my reading of the statute,

23  I find, if I have not done so already, that the failure to pay

24  restitution in this case has been willful.

25          Second, I intend to impose a higher term of

1     imprisonment as part of the resentencing.  I want to be clear

2     about why I am doing it.  I certainly understand Mr. Bengis is

3     elderly.  As is true with almost anyone of his age, he is

4     ailing in some ways.  I impose a higher term of imprisonment in

5     any case with somebody of that age only with the greatest

6     reluctance.  Given my view of his behavior, however, I think I

7     have to apply all of the factors of the Sentencing Reform Act,

8     and I do, and to reflect the seriousness of the offense and the

9     need for general and specific deterrence.

10           Now, what has gone on here, in my judgment, is a

11    blatant attempt by Mr. Bengis to put his assets beyond the

12    reach of the United States in order to avoid the enforcement of

13    what he feared and came ultimately to know would be a very

14    large restitution obligation imposed upon him.

15           I understand, based on my familiarity with the

16    chronology, that all or much of his actions of avoidance came

17    at a time when this court had declined to impose restitution,

18    but the case was on appeal to the Court of Appeals, so the

19    actions were taken with a claim of the United States for a very

20    large amount of restitution -- if memory serves, $90 million,

21    but I may be off on that -- was pending against him and when my

22    decision was subject to being overturned, as it was, in the

23    fullness of time.

24           It is necessary to make clear that the United States

25    is not going to tolerate this behavior in this case or in any

h7j2benS kjc

1    other case, and putting Mr. Bengis aside for just a moment,

2    people who contemplate these kinds of so-called asset

3    protection measures, as certain elements of the bar like to

4    refer to them, or evasion, as others might refer to them, carry

5    with them very large risks, one of them being more jail time.

6          Now, whether the United States will pursue arrest and

7    extradition, whether it will succeed, I have no idea.  That's

8    an executive branch function.  It's up to them.  Whether a

9    jurisdiction in which Mr. Bengis may find himself would grant

10   extradition in these circumstances is not up to me either.

11   It's above my pay grade, to use the vernacular.  But there is

12   value even to Mr. Bengis understanding that one of these days,

13   there may be a knock at the door and a pair of handcuffs in his

14   future, and he ought to feel that.

15         I think it need not be part of the sentence for me to

16   dispose of the $1.8 million with the clerk, is that right,

17   folks?  Ms. Fletcher?  Mr. Creizman?

18         MR. CREIZMAN:  Mr. Bengis has relinquished any right

19   to that.

20         THE COURT:  Is there any reason why we should not just

21   order the payment of that money to the Republic of South

22   Africa?

23         MS. FLETCHER:  No reason, your Honor.

24         THE COURT:  Submit a form of order to my chambers

25   hopefully by tomorrow, after which I hope to go on to a

h7j2benS kjc

1    vacation and maybe catch a fish of my own, providing for that

2    payment.

3          MS. FLETCHER:  I will, your Honor.

4          THE COURT:  I am going to impose forfeiture.  I want

5    to say a word or two about it, although I will file a

6    memorandum in due course explaining how I got to where I have

7    gotten.

8          There is a distinction between the legal standard that

9    governs forfeiture and the legal standard that governs

10   restitution, and everybody should understand I have that firmly

11   in mind.  What I say today on forfeiture does not necessarily

12   determine what I will do on restitution, if anything.  And any

13   amounts may wind up being different.

14         Forfeiture is intended to obtain from the defendant

15   ill-gotten gains.  Restitution is intended to restore to a

16   victim losses.  I have basically have not accepted for

17   forfeiture purposes a lot of the arguments South Africa has

18   made for a variety of reasons.  I have concluded on the basis

19   of the OLRAC study, the specific part of it adopted by the

20   Second Circuit and subsequently by me, that Mr. Bengis, for the

21   year 1999 to 2000, received at least $26,312,000 as a result of

22   the crimes in question.  He has had the benefit of the use of

23   that money for a period of more than 15 years.  There is a time

24   value to money.  I have taken a look at the rates available on

25   U.S. government treasury obligations during that period.  It

h7j2benS kjc

1   has up to now been an eyeballing of the chart.  I have included

2   in the restitution amount that I will ultimately impose simple

3   interest for the use of that $26.3 million for the years 2001

4   through today, and I have used a rate of 2 1/2 percent, which

5   is my rough eyeballing of what the average probably was for

6   that period.  It has gone as high as 6 percent and considerably

7   lower, and the chart has peaks and valleys.  So the interest is

8   about $10.9 million, and that's how I got there and will

9   explain it in more detail later.  And if either side cares

10  enough about it to do a more precise interest rate calculation

11  based on the $26,312,000 figure, which I am firm on, and you

12  can get it to my chambers by Monday, I would consider whether

13  to correct that part of the judgment under Rule 36, I think it

14  is, to reflect a more precise interest number.  I don't know

15  that it is going to be material to anybody and I am, frankly,

16  not expecting to get that, but if I don't get it by Monday, you

17  know the seven days are going to run.

18          Okay.  All of that said, it is the judgment of this

19  court that Mr. Bengis be committed to the custody of the

20  Attorney General of the United States or his designee for a

21  term of imprisonment of 57 months on each count, the terms to

22  run concurrently; that he thereafter serve a term of supervised

23  release of two years on each count, the terms to run

24  concurrently; that Mr. Bengis pay the mandatory special

25  assessment of $400.

1          It is further adjudged that Mr. Bengis forfeit to the

2     United States of America the sum of $37,200,838.36 as lawfully

3     set forth in the order of forfeiture which I have signed today

4     and which, upon entry of judgment, if not before, is final as

5     to Mr. Bengis.  I say that lest the court in Jersey

6     misunderstand the finality of the forfeiture.  It is final

7     today.

8          The term of supervised release shall be subject to the

9     mandatory and standard conditions of supervision 1 through 13,

10     in addition to this special condition:  The defendant shall

11     provide the probation officer with any financial information

12     and documentation he or she may request.

13          The mandatory drug testing condition is suspended

14     because I find a low risk of substance abuse.

15          I advise Mr. Bengis, through his counsel, that to

16     whatever extent he hasn't waived it, he has the right to appeal

17     from the judgment imposing his sentence.  If he wishes to

18     appeal, he must file a written notice of appeal within ten days

19     after the date on which judgment is entered, which I hope will

20     be today and, most surely, will not be later than tomorrow.

21          If he wishes to appeal and can't afford to pay the

22     fees necessary to do so, he has the right to apply for

23     permission to appeal as a poor person, and if such an

24     application were made and granted, he would be permitted to

25     appeal without payment of the fees.

h7j2benS kjc

1          Is there anything else, folks?

2          MS. FLETCHER:  Yes, your Honor, if I may, just a few

3    points of clarification.

4          I understand your Honor's forfeiture ruling to relate

5    to proceeds that the defendant received during the 1999 to 2000

6    period.  Recognizing that that is not, obviously, the entire

7    period over which the defendant received ill-gotten gains, is

8    it your Honor's intention to make that $37 million forfeiture

9    amount be in addition to forfeiture already paid or to act as

10   the total against which the prior forfeiture should offset?

11         THE COURT:  It's in addition to the forfeiture already

12   paid --

13         MS. FLETCHER:  Okay.  Thank you, your Honor.

14         THE COURT:  -- which was for an earlier period.

15         MS. FLETCHER:  That's my understanding, as well, but I

16   wanted to clarify.  Thank you, your Honor.

17         THE COURT:  Okay.  Anything else?

18         MS. FLETCHER:  With respect to the defendant's

19   commitment to the custody of the Attorney General, is it your

20   Honor's intention to require the defendant to surrender

21   immediately or set a short surrender date?

22         THE COURT:  Surrender immediately.  I mean, as a

23   practical matter, it's meaningless, because he is out of the

24   country.

25         MS. FLETCHER:  I understand, your Honor.

h7j2benS kjc

1          Given that your Honor would like him to surrender

2   immediately, the U.S. Attorney's office will likely be bringing

3   over later today an arrest warrant for your Honor to sign.

4          THE COURT:  Okay.

5          Just for my information, that suggests to me that the

6   government will try to extradite him.  Is that right?

7          MS. FLETCHER:  We will certainly try.

8          THE COURT:  Okay.

9          Anything else, Mr. Creizman?

10         MR. CREIZMAN:  No, your Honor.  Thank you.

11         THE COURT:  Thank you.

12                          -  -  -